**STATE of Maine**

v.

**Myron HARDY.**

Supreme Judicial Court of Maine.

Submitted on Briefs Oct. 31, 1994.

Decided Dec. 12, 1994.

---

Michael E. Povich, Dist. Atty., Gregory Campbell, Asst. Dist. Atty., Ellsworth, for State.

Jeffrey C. Toothaker, Ellsworth, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

Myron Hardy appeals from a judgment entered in Superior Court (Hancock County, *Marsano, J.*) on a jury verdict convicting him for unlawful trafficking in a scheduled drug in violation of 17–A M.R.S.A. § 1103 (Supp. 1994).[1] Hardy contends that the court im-

---

1. 17–A M.R.S.A. § 1103 (Supp.1994) provides in pertinent part:

    1. A person is guilty of unlawful trafficking in a scheduled drug if the person intentionally or knowingly traffics in what the person knows or believes to be any scheduled drug, and which is, in fact, a scheduled drug....

       .    .    .    .    .

    2. Violation of this section is:

       .    .    .    .    .

      B. A Class C crime if the drug is a schedule X drug, if it is marijuana in a quantity of more than 2 pounds or if it is marijuana and the person grows or cultivates 100 or more plants;

       .    .    .    .    .

    3. A person is presumed to be unlawfully trafficking in scheduled drugs if the person intentionally or knowingly possesses any scheduled drug that is, in fact:

      A. More than 2 pounds of marijuana....

properly excluded certain relevant evidence and erred in instructing the jury. He also contends that the evidence was insufficient to support his convictions. Finding no error, we affirm the judgment.

In 1990, Maine Drug Enforcement Agency (MDEA) agents were involved in an ongoing drug investigation in the Deer Isle–Stonington area, and Hardy was a prime suspect. Using a confidential informant, MDEA agents made two controlled purchases of marijuana from Hardy. In both controlled buys, the agents recorded the serial numbers of the bills used by the informant to purchase the marijuana. Both times the informant purchased approximately one-quarter ounce of marijuana.

Subsequently, MDEA agents and police obtained and executed a search warrant for Hardy's house. In Hardy's wallet, the agents found four of the same twenty-dollar bills with which the informant had purchased marijuana. In his bedroom, the agents found a safe containing five plastic bags of marijuana and three lists of names and dollar amounts. Also in the bedroom, the agents found more plastic bags of marijuana, triple beam scales, a roach clip, a set of finger scales, three cigarette rolling machines, a pipe, and a box of sandwich baggies. From elsewhere in the house, the agents seized two large trash bags containing smaller plastic bags of marijuana, totaling approximately eight and one-half pounds.

At the trial, in cross-examining Perry Antone, one of the MDEA agents, Hardy attempted to attack Antone's character and credibility with a newspaper article. The article reported that another drug case in which Antone had been involved had been dismissed in part because Antone had been responsible for a discovery violation. Finding there was no discovery violation in this case, the court excluded the newspaper article as irrelevant.

Hardy testified that he owned all the marijuana found in his house, that it was for his personal use, and that he feels marijuana should be legalized. He claimed that the marijuana seized by the police was his "winter stash" for himself and his friends and that he did not intend to traffick. The court

*sua sponte* excluded from evidence a book offered by Hardy detailing the history of marijuana and why it should be legalized.

Hardy requested that the court instruct the jury that a two-step process must be used before he could be found guilty of trafficking: (1) a determination of whether he trafficked in marijuana; and (2) a separate determination as to the amount of marijuana intended to be trafficked. Hardy also requested that the jury be instructed that unlawful possession of marijuana was a lesser included offense to trafficking in marijuana. The court refused both requests.

## I.

■ We are unpersuaded by Hardy's contention that the court committed error by refusing to allow him to cross-examine Agent Antone with a newspaper article concerning a different drug case that was dismissed in part due to Antone's failure to disclose the name of a witness until shortly before the trial. The court in that case found the failure to be a discovery violation. In contrast, the trial court in this case determined that inquiry into the conduct of Agent Antone in a previous case that may have constituted a discovery violation is irrelevant. A trial court's determination as to relevance is reviewed for clear error. *See State v. Giovanini,* 567 A.2d 1345, 1346 (Me.1989). Moreover, a newspaper article is inadmissible hearsay. *See Corbeil v. Patrons Mut. Ins. Co.,* 383 A.2d 1093 (Me.1978) (newspaper article on a windstorm was inadmissible hearsay); *see also* M.R.Evid. 802. We discern no error in the court's exclusion of this newspaper article.

## II.

■ Hardy further contends that the court erred in instructing the jury on 17–A M.R.S.A. § 1103 because it did not apprise the jury that it had to make a two-step inquiry to determine guilt under the statute. He contends that the jury first must determine if the defendant "trafficked" in marijuana, and, if they so find, they then must determine how much marijuana the defendant intended to traffick. Hardy asserts

that if the jury had been instructed in this manner, it is likely it would have determined that Hardy intended to traffick only the amount the evidence showed was involved in the controlled purchases. Hardy's contention is without merit.

The court correctly instructed the jury as to the elements of trafficking in marijuana pursuant to 17–A M.R.S.A. § 1103 (jury must find that defendant has intentionally or knowingly trafficked in what he knows or believes to be a scheduled drug and which is, in fact, a scheduled drug), and the permissible inference pertaining to possession set out in section 1103(3)(A).

### III.

Hardy argues that the court should have given an instruction on criminal possession of marijuana because it is a lesser included offense of unlawful trafficking. Hardy argues that his defense was personal use and possession, and by refusing to give the instruction, the court did not allow the jury to consider reaching a different result.

■ "A jury instruction on a lesser included offense does not have to be given unless the issue is supported by the evidence and a rational basis exists for the jury to find the defendant guilty of the lesser offense." *State v. Pierre*, 649 A.2d 333, 334 (Me.1994) (citations omitted). "[I]n order for one offense to be a lesser included offense of another, separate offense, the lesser included offense, *as legally defined*, must necessarily be committed when the greater offense, *as legally defined*, is committed." *State v. Thornton*, 540 A.2d 773, 776 n. 9 (Me.1988); 17–A M.R.S.A. § 13–A(2) (1983). Unlawful possession of scheduled drugs pursuant to 17–A M.R.S.A. § 1107[2] is not a lesser included offense of unlawful trafficking in scheduled drugs pursuant to 17–A M.R.S.A. § 1103, because one

need not "possess" marijuana in order to "traffick" in marijuana. *See* 17–A M.R.S.A. § 1101(17) (definition of "traffick").[3]

■ In this case, the court correctly refused to instruct the jury on possession because it is not a lesser included offense of trafficking. An instruction on unlawful possession could be given only under the provisions of 17–A M.R.S.A. § 13–A(3), which allows a trial court in its discretion to instruct on offenses not charged if the instruction is justified by the evidence and both the State and the defendant consent to its being given. In this case the State did not consent, and Hardy was not entitled to an instruction on unlawful possession.

### IV.

■ Finally, contrary to Hardy's contention, the evidence was sufficient to sustain the jury's verdict. There was evidence that Hardy had a large amount of marijuana in his possession, along with drug scales, records of drug transactions showing dollar amounts, other drug paraphernalia, as well as evidence of his participation in two separate controlled buys. When viewed in the light most favorable to the State, the jury rationally could find all the elements of unlawful trafficking in scheduled drugs beyond a reasonable doubt. *State v. Barry*, 495 A.2d 825, 826 (Me.1985).

Other issues raised by Hardy do not merit discussion.

The entry is:

Judgment affirmed.

All concurring.

---

**2.** In pertinent part, 17–A M.R.S.A. § 1107(1) (Supp.1994) provides, "A person is guilty of unlawful possession of a scheduled drug if that person intentionally or knowingly possesses what that person knows or believes to be a scheduled drug, and which is, in fact, a scheduled drug. . . ."

**3.** 17–A M.R.S.A. § 1101(17) (1983 & Supp.1994) defines "traffick" as:

A. To make, create, manufacture;
B. To grow or cultivate;
C. To sell, barter, trade, exchange or otherwise furnish for consideration; or
D. To possess with the intent to do any act mentioned in paragraph C, except that possession of 2 pounds or less of marijuana with such intent shall be deemed furnishing.