### STATE of Maine

v.

### Charlene CLOUTIER.

Supreme Judicial Court of Maine.

Argued Oct. 30, 1995.

Decided June 21, 1996.

David W. Crook, District Attorney, Paul Rucha (orally), Assistant District Attorney, Augusta, for the State.

Michael J. Daly (orally), Shapiro & Daly, Gardiner, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

ROBERTS, Justice.

The State appeals pursuant to 15 M.R.S.A. § 2115–A(1) (1980) from an order entered in the District Court (Augusta, *Anderson, J.*) suppressing evidence that Charlene Cloutier operated a motor vehicle while under the influence of intoxicating liquor (OUI) and after a license suspension (OAS). The State contends that the court erred in determining that evidence obtained from the second of two arrests of Cloutier was tainted by a prior illegal stop. We affirm the suppression order.

The undisputed evidence at the suppression hearing may be summarized as follows. At approximately 1:30 A.M. on September 4, 1994, Officer John Christopher Read of the Augusta Police Department stopped Cloutier, who was driving a pickup truck, because he suspected that she was the cause of a disturbance complaint to which he was responding. After speaking with Cloutier, Officer Read suspected that she was intoxicated. Accordingly, he conducted field sobriety tests, which Cloutier failed. The officer then arrested her for OUI.

At the police station an intoxilyzer test revealed that Cloutier had a blood-alcohol level of .13, and a report from the Bureau of

Motor Vehicles indicated that her license had been suspended. Cloutier subsequently was bailed at approximately 2:40 A.M., and she asked Officer Read how she could move her truck, which had been left at the side of the road where she was arrested. Officer Read told her that "she would have to wait till the morning to get a licensed sober operator to move it."

After Cloutier left the police station, Officer Read drove to a location from which he could observe her vehicle. He testified that he did so "[b]ecause it's been my experience that a lot of people that are arrested for OUI, after bailing out, if their vehicle is still available, again drive after being told not to." At approximately 2:50 A.M., Officer Read saw three women get into Cloutier's truck and drive it, without its headlights on, sixty feet to a nearby parking lot. After approaching the truck in his patrol car, Officer Read reminded Cloutier that he had told her not to drive, to which she responded, "I just wanted to pull [the truck] over there." Without conducting any field sobriety tests or making any observations of intoxication, Officer Read arrested Cloutier, took her to the police station, and once again conducted a blood-alcohol test.

The State filed four complaints in the District Court, two charging Cloutier for OUI and OAS arising from the first arrest and two for OUI and OAS arising from the second arrest. After a hearing on Cloutier's motion to suppress, the court concluded that Officer Read's stop of Cloutier prior to her first arrest was not based on a reasonable articulable suspicion that she was engaged in criminal conduct. Consequently, the court ordered the suppression of all evidence obtained as a result of the illegal stop, including the evidence obtained after Cloutier's second arrest.

On appeal, the State conceded that Officer Read lacked sufficient articulable suspicion to stop Cloutier, and it dismissed the charges arising from the first arrest. Accordingly, the State does not challenge the trial court's suppression of evidence obtained from Officer Read's stop and first arrest of Cloutier. The State nonetheless contends that the trial court erred by suppressing evidence obtained

as a result of Cloutier's second arrest because (1) the exclusionary rule does not apply to crimes committed subsequent to a prior illegal search or seizure or (2) if the exclusionary rule *does* apply to subsequent crimes, it should not apply to the evidence at issue because Cloutier's second arrest was sufficiently attenuated from the illegal stop that it does not constitute a "fruit" of that prior illegality.

■ The contentions raised by the State are based on a flawed analysis of the facts. The State's primary and alternative arguments both focus on whether evidence arising from Cloutier's second arrest should be suppressed as a result of her prior illegal stop. In asserting these arguments, the State fails to recognize the lack of sufficient probable cause to support Cloutier's second arrest.

On the record before us, it is clear that probable cause for Officer Read's second arrest was based solely on evidence obtained as a result of the prior illegal stop. Officer Read did not conduct additional field sobriety tests or make other observations of criminal conduct on which to base probable cause for Cloutier's second arrest. Rather, he immediately arrested Cloutier based on information illegally obtained. Illegally obtained evidence cannot form the basis of probable cause for a search or seizure. *See Murray v. United States,* 487 U.S. 533, 540, 108 S.Ct. 2529, 2534, 101 L.Ed.2d 472 (1988); *Alderman v. United States,* 394 U.S. 165, 177, 89 S.Ct. 961, 968, 22 L.Ed.2d 176, *reh'g denied sub nom., Ivanov v. United States,* 394 U.S. 939, 89 S.Ct. 1177, 22 L.Ed.2d 475 (1969); *State v. Storer,* 583 A.2d 1016, 1019 (Me. 1990); *State v. Crider,* 341 A.2d 1, 7 (Me. 1975). *See also Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920) ("The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all.").

■ Prior to oral argument in this case, we solicited comments from the parties concerning the effect of *State v. Ann Marie C.,* 407 A.2d 715 (Me.1979), on the issue before

us. The State responded that our decision in that case requires us to vacate the suppression order in this case. We disagree. In *Ann Marie C.,* we concluded that the arresting officers had established probable cause to arrest the defendant on the basis of (1) a confession obtained from a prior illegal arrest of defendant and (2) other legally obtained evidence. Unfortunately the cases on which we relied do not support that conclusion. In *United States v. Ceccolini,* 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978), the Supreme Court decided that testimony of an employee in her boss's perjury prosecution did not have to be excluded because she was interviewed following a tip from a police officer who illegally learned of her knowledge of the defendant's gambling activity. The Court found the degree of attenuation sufficient to dissipate the connection between the illegal search and the witness testimony. Even less supportive is the decision in *Michigan v. Tucker,* 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974), in which the issue was the application of the prophylactic standard of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), to the testimony of a trial witness discovered through an interrogation of the defendant that violated the *Miranda* standard. The Supreme Court concluded that although *Miranda* required the exclusion of the defendant's statement, the exclusion of the witness's testimony was not required. *Tucker,* however, did not involve a Fourth Amendment violation. Moreover, we have not found any other federal case to support our reasoning in *Ann Marie C.* To the extent that *Ann Marie C.* supports the use of evidence obtained in violation of the Fourth Amendment to establish probable cause for an arrest, it is expressly overruled.

The trial court properly suppressed the evidence arising from Cloutier's second illegal arrest.

The entry is:

Suppression order affirmed.

WATHEN, C.J., and GLASSMAN, and RUDMAN, JJ., concurring.

CLIFFORD, Justice, with whom DANA and LIPEZ, Justices, join, dissenting.

Because the defendant's subsequent voluntary operation of the motor vehicle is a new criminal act and, in any event, involved an additional motor vehicle violation independent of the officer's knowledge that Cloutier's license was suspended or that she was intoxicated, I respectfully dissent.

At the time of Cloutier's release from custody, the officer knew that her right to operate a motor vehicle had been suspended, and he observed her in an intoxicated condition. He warned her not to operate her vehicle. Despite her condition and in disregard of the warning, Cloutier created a danger on the highway by driving the vehicle. Further, she did so without the use of headlights. Although the officer's knowledge of Cloutier's intoxicated condition and the fact of her license suspension was derived from a prior stop of her vehicle that has been determined illegal, the law should not force the officer to disregard such knowledge in the face of a new, voluntary criminal activity that occurs in his presence unless the *purpose* of the first stop was impermissibly to gather evidence for a second stop, or unless the second stop constituted entrapment. Neither of those circumstances is present here. Moreover, Cloutier operated the vehicle without the use of headlights, a clear violation of the law. *See* 29–A M.R.S.A. § 2067(1) (1996). The officer's observance of that fact in no way depended on his prior knowledge of Cloutier's state of sobriety or the status of her license.

Exclusion of the evidence resulting from the second stop does not serve to deter police misconduct, nor is it necessary to uphold the integrity of the judicial system. *See Dunaway v. New York,* 442 U.S. 200, 218, 99 S.Ct. 2248, 2259, 60 L.Ed.2d 824 (1979) (deterrence and integrity of courts as reasons justifying exclusionary rule); *see also State v. Stone,* 294 A.2d 683, 694–95 (Me.1972). I am reluctant to abandon the rationale of *State v. Ann Marie C.,* 407 A.2d 715 (Me.1979). In that case, we stated:

Here the function of the exclusionary rule is to deter unlawful police conduct rather than to insulate the accused from investi-

gation and prosecution for subsequent, discrete criminal activity. Any incremental deterrent effect on errant police behavior engendered by such a mechanical application of the rule would come at the cost of substantial impairment to the criminal investigatory process.

*Ann Marie C.*, 407 A.2d at 723 (citations omitted). In my view, the court's decision excluding evidence gathered from the second stop applies the exclusionary rule in a mechanical way so as to insulate Cloutier from the consequences of her new criminal conduct that occurred *after* the first stop. *See State v. Boilard,* 488 A.2d 1380, 1386–87 (Me. 1985). It also disregards the officer's observation of Cloutier's operation of the vehicle without the use of headlights.

I would vacate the District Court's order and remand for entry of an order denying the motion to suppress.