**STATE of Maine**

v.

**Kenneth HUNT.**

Supreme Judicial Court of Maine.

Submitted on Briefs May 22, 1996.

Decided Aug. 21, 1996.

R. Christopher Almy, District Attorney, Bangor, for the State.

William S. Kelly, Belfast, for Defendant.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

LIPEZ, Justice.

Kenneth Hunt appeals from a judgment of conviction for theft by receiving stolen property, 17–A M.R.S.A. § 359 (1982), on the ground that the Superior Court (Penobscot County, *Kravchuk, J.*) improperly denied his pretrial motion to suppress evidence.[1] Hunt contends that items seized from an apartment a month after he vacated it must be excluded as "fruits of the poisonous tree." We disagree and affirm the conviction.

*I*

Early on the morning of October 5, 1994 a break-in occurred at the Hide–A–Way Bottle Club in Dover–Foxcroft. The perpetrators stole compact discs (CDs) valued at $10,000–$12,000 and approximately $100 in cash. Kenneth Hunt was immediately a suspect. Around 1:00 p.m. on October 5, members of the Penobscot County Sheriff's Department approached the landlord of an apartment that Hunt shared with Scott Libby and asked to search the apartment. Libby, who had rented the apartment, had informed the landlord earlier that he was vacating the apartment as of October 3, 1994. Although the

landlord was aware that Hunt had moved into the apartment, he assumed that Hunt had moved out of the apartment with Libby, and he consented to the search.

At the time of the search, however, Hunt had not vacated the apartment. Upon being notified that the police were searching his apartment, Hunt returned to the apartment only to find that the police had gone. Hunt testified that he "felt violated" and unsafe in the apartment as a result of the search. Collecting "everything there that [he] wanted," Hunt vacated the apartment on October 5 with no intention of returning.

On November 4, 1994, members of the sheriff's department returned to the vacant apartment and asked the landlord to permit them to search it again. He consented. Among the refuse in the apartment the officers found receipts for Hunt's sale of approximately 450 CDs to a music store.

After being indicted for burglary and theft for the break-in at the Hide–A–Way Bottle Club, Hunt filed a motion to suppress evidence seized during the November 4 search. At a preliminary hearing held to determine whether Hunt had standing to challenge the warrantless searches of the apartment on October 5 and November 4, the court (Piscataquis County, *Mead, J.*) found that, although Hunt had standing to challenge the October 5 search, he lacked standing to challenge the November 4 search and seizure because he admitted that he had left only trash in the apartment.

After a subsequent two-day suppression hearing, the court (*Kravchuk, J.*) denied Hunt's motion to suppress the evidence collected during the November 4 search.[2] The

---

1. Although Hunt was indicted by the Grand Jury in Piscataquis County, his case was transferred to the Superior Court, Penobscot County, by agreement of the parties.

2. As indicated, there were two separate hearings. The first hearing dealt solely with the standing issue, *i.e.*, whether Hunt had a justified expectation of privacy in either the objects seized or the areas searched. The second hearing dealt only with the "legality" of the searches, *i.e.*, whether the challenged searches violated the Fourth Amendment because of the officer's failure to observe probable cause and warrant requirements.

The Supreme Court has discouraged attempts to consider Fourth Amendment "standing" as an issue distinct from the merits of a defendant's claim. The "better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing." *Rakas v. Illinois*, 439 U.S. 128, 139, 99 S.Ct. 421, 428, 58 L.Ed.2d 387 (1978) *See also Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980) ("[I]n *Rakas* ... we abandoned a separate inquiry into a defendant's "standing" to contest an allegedly illegal search in favor of an

court found that during the first search the State had seized only "drug paraphernalia" that the State did not intend to offer in the current prosecution, and that the officers had not seen any of the evidence of the "Bottle Club" burglary that they seized during the second search. The court further concluded that nothing the officers did during the first search tainted the November 4 search. Hunt appeals from this denial.

## II

Although the court did not make an explicit finding that the October 5 search was unconstitutional, it did find that "Hunt was actually still living in the premises and did not give anyone permission to enter his dwelling place." It also concluded that the search of October 5 "did not taint the officers' return on November 4. . . ."

 Pursuant to the exclusionary rule the State is prohibited from using evidence obtained in violation of the Fourth Amendment against a defendant in a criminal proceeding. *Weeks v. United States,* 232 U.S. 383, 398, 34 S.Ct. 341, 346, 58 L.Ed. 652 (1914). The exclusionary rule applies to evidence obtained as a direct result of the misconduct of government officials as well as to the indirect evidentiary fruits of their misconduct. *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920). The rule does not apply, however, if the connection between the official misconduct and the discovery of the evidence is sufficiently weak. *See, e.g., United States v. Ceccolini,* 435 U.S. 268, 274–75, 98 S.Ct. 1054, 1059–60, 55 L.Ed.2d 268 (1978) (passage of time and the voluntary testimony of witness removed taint); *Wong Sun v. United States* 371 U.S. 471, 487–88, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441 (1963) (confession made several days after defendant's arrest and release from custody not tainted by illegal search). Although "[s]ophisticated argument may prove a causal connection between

the information obtained . . . and the Government's proof, . . . [a]s a matter of good sense . . . such connection may become so attenuated as to dissipate the taint." *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939).

 A defendant cannot claim a reasonable expectation of privacy in the premises searched or the objects seized if the defendant voluntarily abandoned the premises or the objects prior to the search or seizure. *State v. Philbrick,* 436 A.2d 844, 854 (Me. 1981) ("A person who has *voluntarily* abandoned property cannot complain of its search and seizure."). "Abandoned property," however, may be excluded from evidence if the defendant involuntarily abandoned the objects as a result of unlawful police action. *See, e.g., United States v. Wood,* 981 F.2d 536, 541 (D.C.Cir.1992) (gun dropped after illegal stop suppressed because no intervening event occurred between illegal stop and abandonment of gun); *United States v. Wilson,* 953 F.2d 116, 127 (4th Cir.1991) (defendant threw away coat containing contraband while fleeing from illegal *Terry* stop); 1 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 2.6(b) (1996) ("[I]t is clearly established that, although abandoned property may normally be obtained and used for evidentiary purposes by the police, this is not so if the abandonment was coerced by or otherwise the fruit of unlawful police action.").

 Even if the October search of the apartment Hunt still occupied was an unreasonable search and seizure, *see Chapman v. United States,* 365 U.S. 610, 616–17, 81 S.Ct. 776, 779–80, 5 L.Ed.2d 828 (1961) (landlord can not effectively consent to a police search of a rented apartment), the passage of time and Hunt's own volitional acts so weakened the connection between the State's search of October 5 and the subsequent seizure of the challenged evidence that any taint resulting from the original warrantless search was dis-

inquiry that focused directly on the substance of the defendants claim. . . .").
Our analysis on appeal illustrates the wisdom of the Supreme Court's advice and the artificiality of separating Fourth Amendment standing issues from the substance of a defendant's claim. At the first hearing on standing the court focused

on Hunt's abandonment of the apartment subsequent to the October 5 search in concluding that he had no standing to challenge the November 4 search. That same concept of abandonment is central to our attenuation analysis that addresses the merits of Hunt's claim that the October 5 search tainted the November 4 search.

sipated. *Cf. State v. Grandmaison*, 327 A.2d 868, 870 (Me.1974) (clear acts of free will on part of defendant effectively purges tainted evidence of its stigma). Hunt was unwavering in his testimony at the suppression hearing that he had removed from the apartment everything that he wanted, leaving behind only "trash," and that he left the apartment on October 5 intending never to return. He decided to end his tenancy after the search of October 5 without being subjected to direct police coercion, and he further decided not to return to the apartment during the intervening month to recover items he had left behind. In short, he voluntarily abandoned his apartment and the items left therein.[3] *See State v. Oken*, 569 A.2d 1218, 1220 (Me.1990) (motel room deemed abandoned when defendant had removed all personal effects); *State v. Fisher*, 141 Ariz. 227, 686 P.2d 750, 759 (1984) (apartment deemed abandoned at time of search where defendant was shown to have left without intent to return as evidenced by his having removed clothes and television); *People v. Morrison*, 196 Colo. 319, 583 P.2d 924, 926 (1978) (apartment deemed abandoned at time of search where all personal effects other than trash were removed). The search of October 5 did not taint the search and seizure of November 4.

The entry is:

Judgment affirmed.

All concurring.

---

3. In an attempt to suppress the evidence seized during the November search, Hunt advances a novel "constructive eviction" argument. He claims that the sheriff's officers were effectively agents of the landlord who consented to the search, and that their unwarranted search "constructively evicted" him from his apartment, causing him to abandon the incriminating evidence that was ultimately recovered during the second search. The officers were not agents of the landlord in any sense. Hunt's attempt to modify the Fourth Amendment concept of abandonment with the doctrine of constructive eviction is unpersuasive.