1998 ME 163

**STATE of Maine**

v.

**Ralph L. BOYINGTON, Jr.**

Supreme Judicial Court of Maine.

Argued Feb. 3, 1998.

Decided June 30, 1998.

142

Geoffrey A. Rushlau, District Attorney, Patricia A. Mador (orally), Assistant District Attorney, Wiscasset, for the State.

John P. Gause (orally), Berman & Simmons, Lewiston, for Defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, LIPEZ, and SAUFLEY, JJ.

LIPEZ, Justice.

[¶1] Ralph L. Boyington, Jr. appeals from the judgment entered in the Superior Court (Lincoln County, *Brodrick J.*) following his conditional guilty plea to Trafficking by Cultivation in violation of 17–A M.R.S.A. § 1103 (1983 & Supp.1997). Boyington contends that the Superior Court (Lincoln County, *Calkins J.*) erred in denying his motion to suppress evidence seized at his residence. We disagree and affirm the judgment.

I.

[¶2] On July 8, 1996, at approximately 9:18 p.m., an officer of the Waldo County Sheriffs Department was on routine patrol when he observed a vehicle proceeding in a jerky manner, with a revved-up engine, for forty to fifty feet. The officer also observed that the occupants of the vehicle were not wearing seatbelts. The officer followed the vehicle and pulled in behind it when the vehicle entered a driveway, notwithstanding the fact that the jerky operation had ceased. When the occupants denied that the vehicle contained any drugs or alcohol, the officer asked Boyington, the vehicle's operator, for permission to conduct a search. According to the officer, Boyington consented. Ulti-

mately, the officer discovered fifty-one marijuana plants in the trunk and arrested Boyington and his passenger.

[¶3] At approximately 10:30 p.m., the sheriffs department communicated information concerning Boyington's arrest to Officer Rice of the Waldoboro Police Department. At approximately 11:30 p.m., the sheriffs department notified Officer Rice that Boyington was about to call home from the jail. Officer Rice then proceeded to the public road adjacent to the Boyington residence. Using a night scope, Officer Rice, who was approximately 100 feet away from the residence, observed Boyington's wife, Phoebe, exit a barn and carry a tray of plants to a pond located on the property. Phoebe threw the tray into the pond, returned to the barn, exited again with a tray of plants, and threw that tray into the pond. Officer Rice then walked up to the pond and observed plants floating in the water that he identified as marijuana.

[¶4] Phoebe met Officer Rice at the front door of the house. After expressing concern for her children and speaking with Boyington on the telephone, Phoebe consented to a search of the premises. One-half hour later, Officer Rice obtained a consent form; at approximately 2 a.m., Phoebe signed this form and a waiver of her *Miranda* rights. During the subsequent search, officers seized 351 marijuana plants from the barn, the pond, a lobster boat, and a nearby wooded area.

[¶5] The District Court (Belfast, *Staples, J.*) granted Boyington's motion to suppress the evidence seized from his car, finding that the sheriffs department officer lacked a reasonable articulable suspicion to stop Boyington's vehicle. On the basis of the evidence seized at Boyington's residence, the State obtained a grand jury indictment charging him with trafficking by cultivation in violation of 17–A M.R.S.A. § 1103. Boyington then moved to suppress the evidence seized at his residence, arguing that this evidence was a "fruit" of the illegal stop of his vehicle. After the Superior Court denied his motion to suppress, Boyington entered a conditional guilty plea. This appeal followed.

## II.

[¶ 6] The Fourth Amendment establishes the right of persons to be secure in their homes against unreasonable searches and seizures. U.S. Const. amend. IV; *see State v. Philbrick*, 436 A.2d 844, 854 (Me.1981). "Fourth amendment protection extends not only to the interior of a dwelling but also to the 'curtilage,' that is, to the land immediately surrounding and associated with the home." *State v. Cloutier*, 544 A.2d 1277, 1279 (Me.1988). We have observed that "[o]ne's claim of protection under the Fourth Amendment depends not upon a property right in the invaded place ... but rather upon whether the person has a legitimate expectation of privacy in the invaded place...." *Philbrick*, 436 A.2d at 854.

[¶ 7] Boyington challenges the court's conclusion that the pond searched by Officer Rice is outside the curtilage of Boyington's home. "A ruling on a motion to suppress evidence based on uncontroverted facts involves a legal conclusion that we review independently on appeal." *State v. Stade*, 683 A.2d 164, 165 (Me.1996). We have noted that "the reach of the curtilage of a home depends on the facts of each case." *State v. Cayer*, 617 A.2d 208, 209 (Me.1992). We have identified four factors that are useful analytical tools for evaluating whether an area is within the curtilage:

> (1) proximity of area claimed to be curtilage to the home; (2) whether area claimed to be curtilage is included within an enclosure surrounding the home; (3) nature of the uses to which the area is put; and (4) steps taken by the resident to protect the area from observation by people passing by.

*Id.* (citing *United States v. Dunn*, 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987)). None of these factors is dispositive. *See United States v. Dunn*, 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987) ("We do not suggest that combining these factors produces a finely tuned formula that, when mechanically applied, yields a 'correct' answer to all extent-of-curtilage questions."). To the contrary, these factors facilitate a curtilage analysis "only to the degree that, in any given case, they bear upon the centrally relevant consideration—whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Id.* The State bears the burden of proving that an area is outside the curtilage. *See Philbrick*, 436 A.2d at 854 (noting that the State bears the burden of proving an exception to the general rule that warrantless searches are per se unreasonable).

[¶ 8] The court determined correctly that the pond is not within the curtilage of Boyington's home. The pond is separated from Boyington's house by a driveway and by a few yards of grass with cattails. The distance between the pond and the house is, at the pond's nearest edge, between thirty and forty feet, and, at its furthest edge, between eighty and ninety feet. The pond is located between the driveway and the public road, is not contained within any form of enclosure, and is plainly visible from the public road. Although the State did not introduce any evidence as to the use of the pond, the facts in the record refute any contention that the pond "harbors the intimate activities associated with the sanctity of a home and the privacies of life." *State v. Martin*, 553 A.2d 1264, 1264 (Me.1989). Officer Rice's observation that the plant material floating in the pond was marijuana did not constitute an illegal search.

## III.

[¶ 9] Boyington argues alternatively that Phoebe's consent to the search of their residence was void because it was tainted by the prior illegal stop of his vehicle. "Pursuant to the exclusionary rule the State is prohibited from using evidence obtained in violation of the Fourth Amendment against a defendant in a criminal proceeding." *State v. Hunt*, 682 A.2d 690, 692 (Me.1996). The exclusionary rule applies to "indirect evidentiary fruits" of governmental misconduct and prohibits the use at trial of evidence obtained as a result of an unconstitutional stop. *Id.; see also State v. McKenzie*, 440 A.2d 1072, 1076 (Me.1982). Not all evidence, however, "is 'fruit of the poisonous tree' simply because it would not have come to light but for

the illegal actions of the police." *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We must determine " 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " *State v. Le-Gassey*, 456 A.2d 366, 368 (Me.1983) (quoting *Wong Sun*, 371 U.S. at 488, 83 S.Ct. 407). A consent to a search may purge the taint of a stop or arrest that was conducted in violation of the Fourth Amendment. *See McKenzie*, 440 A.2d at 1077.

■ [¶ 10] Our prior cases have set forth five factors, originally articulated by the Supreme Court in *Brown v. Illinois*, 422 U.S. 590, 603–04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), to determine whether evidence should be suppressed as a "fruit" of the initial illegality: (i) the voluntariness of consent; (ii) the proximity in time between the illegal stop and the search; (iii) the presence of intervening circumstances; (iv) the purpose and flagrancy of police misconduct; and (v) police compliance with *Miranda*. *See, e.g., McKenzie*, 440 A.2d at 1077. In *Brown*, the police arrested the defendant without probable cause and without a warrant. *See* 422 U.S. at 591, 95 S.Ct. 2254. After the police fully apprised the defendant of his *Miranda* rights, he made two inculpatory statements. *See id.* The state court determined that the defendant's statements were not a "fruit" of his illegal arrest because the administration of *Miranda* warnings sufficed to break the causal connection. *See id.* at 597, 95 S.Ct. 2254. The Supreme Court rejected this determination, reasoning that *"Wong Sun* requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be 'sufficiently an act of free

will to purge the primary taint.' " *Id.* at 602, 95 S.Ct. 2254 (quoting *Wong Sun*, 371 U.S. at 486, 83 S.Ct. 407). The Court concluded that police compliance with *Miranda* is "an important factor" to determine "whether a *confession* is the product of a free will under *Wong Sun*," but it is not the only factor. *Id.* at 603, 95 S.Ct. 2254 (emphasis added).

[¶ 11] *Brown* was a case "at the crossroads of the Fourth and the Fifth Amendments." *Id.* at 591, 95 S.Ct. 2254.[1] This case, in contrast, is only about the Fourth Amendment. Boyington seeks the suppression of physical evidence that the police discovered as a result of Phoebe's consent to a search. He does not seek to suppress any of her statements. Police compliance with *Miranda*, therefore, did not further the attenuation between the illegal stop and her consent. *Cf. id.* at 600, 95 S.Ct. 2254 (stating that the *Miranda* warnings function "as a prophylactic rule and as a procedural safeguard employed to protect Fifth Amendment rights against the compulsion inherent in custodial surroundings"). Although police compliance with *Miranda* prior to a consent to search may be relevant to the voluntariness of that consent, *see* 3 WAYNE R. LaFAVE, SEARCH AND SEIZURE § 8.2(j), at 692 (3d ed.1996), Boyington does not dispute that Phoebe's consent was voluntary, and the State does not dispute that Phoebe's consent preceded the *Miranda* warnings. Therefore, to determine whether Phoebe's consent was obtained by exploitation of the prior illegality, we must examine only the remaining three factors identified in *Brown* as relevant to the "fruit of the poisonous tree" analysis: the purpose and flagrancy of the police misconduct, the proximity in time between the illegal stop and her consent, and the presence or absence of intervening circumstances.[2] *See* 422 U.S. at 603–04, 95 S.Ct. 2254.

---

1. Pursuant to the Fourth Amendment to the United States Constitution,

   [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV. Pursuant to the Fifth Amendment, "[n]o person shall ... be compelled in any criminal case to be a witness against himself...." U.S. Const. amend V.

2. In *State v. McKenzie*, we examined whether physical evidence and statements obtained during a consent search should be suppressed as "fruits" of a prior illegal stop of the defendant's vehicle. *See* 440 A.2d at 1076–77. Our analysis of the connection between the invalid stop and

 

■ [¶ 12] Although the sheriffs department officer lacked the requisite degree of suspicion to stop Boyington's vehicle, there is nothing in this record that suggests flagrant police misconduct. Approximately four hours elapsed between the stop of Boyington's vehicle and Phoebe's consent. During that time period, the police conducted additional, lawful investigative activities that led to the discovery of additional evidence of criminal activity. *Cf. State v. Cloutier*, 678 A.2d 1040, 1041 (Me.1996) (affirming suppression of evidence seized during the second of two arrests, because officer's second arrest of the defendant was based solely on evidence obtained as a result of the prior illegal stop, rather than on any additional investigation or observation of criminal conduct).

■ [¶ 13] Boyington vigorously disputes that Officer Rice's observation of the marijuana plants that Phoebe threw into the pond qualifies as an intervening event sufficient to attenuate the connection between the illegal stop and the consent to search. We acknowledge that Officer Rice proceeded to the public road adjacent to the Boyington residence only after receiving information from the Waldo County Sheriff's Department concerning the seizure of marijuana from Boyington's car. Nevertheless, the officer was positioned legally on that road when he observed Phoebe throwing plants into the pond. Although the officer suspected that those plants were marijuana because of the information that he received from Waldo County, he did not, upon observing Phoebe discard the plants, ask her to consent to a search. Instead, he proceeded lawfully to the edge of the pond, a vantage point outside the curtilage, and made the additional observation that the plants were in fact marijuana. This additional observation of criminal activity prompted the officer to request Phoebe's consent to a search. The evidence seized at Boyington's residence was not a "fruit" of the prior illegal stop. The Superior Court did not err when it denied Boyington's motion to suppress.

the seizure of the physical evidence considered the investigating officer's compliance with *Miranda* notwithstanding the defendant's acknowledgement that he had consented to the search voluntarily. *See id.* at 1077. Given that ac-

The entry is:

Judgment affirmed.

knowledgement, compliance with *Miranda* should have been considered in *McKenzie* only with regard to the admissibility of the defendant's statements.