2000 ME 196

**STATE of Maine**

v.

**Joseph FALCONE.**

Supreme Judicial Court of Maine.

Submitted on Briefs Oct. 18, 2000.
Decided Nov. 3, 2000.

---

Stephanie Anderson, District Attorney, Julia Sheridan, Asst. Dist. Atty., Portland, for State.

William R. Savage, Esq., Portland, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] Joseph Falcone appeals from the judgment of the Superior Court (Cumberland County, *Fritzsche, J.*) following his jury conviction for theft by unauthorized taking, 17–A M.R.S.A. § 353 (1983); assault, 17–A M.R.S.A. § 207 (1983); violating a protection from abuse order, 19–A M.R.S.A. § 4011(1)(B) (1998 & Supp.1999); and violating a condition of release, 15 M.R.S.A. § 1092 (Supp.1999). On appeal, Falcone contends that the evidence does not support the jury's determination that he entered the victim's residence in violation of the protection from abuse order and .the conditions of release.[1] We disagree and affirm the judgment.

---

1. Falcone does not appeal the theft or assault convictions.

## I. CASE HISTORY

[¶ 2] On March 16, 1998, Falcone and Jennifer Fasulo had an altercation. Falcone was subsequently arrested and released on bail. The conditions on Falcone's release required that he have "no contact direct or indirect with Jennifer Fasulo," and that he was "not to return to victim's residence." By agreement of the parties, the District Court (Portland, *Goranites, J.*) entered an order for protection from abuse on April 3, 1998. Pursuant to the order, Falcone was "prohibited from going upon the premises of any separate residence of [Fasulo's]," and was specifically "excluded . . . and prohibited from entering the residence at 29 Daggett Street, Portland, Maine."

[¶ 3] At trial, Holly Dell'quilla testified that on April 6, 1998 she saw Falcone dragging trash cans from his parents' house to the front of Fasulo's house at 29 Daggett Street, and that she saw Falcone jump over Fasulo's fence into Fasulo's yard. Michael Dell'quilla testified that on that same date he saw Falcone climb over the fence to exit Fasulo's yard. Holly and Michael also testified that they knew Fasulo was not living at that residence at that time. Fasulo testified that she was staying with her parents on April 6, 1998 because Falcone lived next door to her Daggett Street residence and she was too "scared" to stay there. Falcone testified that he jumped the fence at 29 Daggett Street to retrieve some items from a storage shed located on the property.

[¶ 4] Falcone was arraigned on the four-count indictment, and the case was tried before a jury. At the close of the State's case, Falcone moved for, and was denied, a judgment of acquittal on the charges of violating a protection from abuse order and violating a condition of release. The jury convicted Falcone on all four counts.[2]

2. Falcone was sentenced to 3½ years imprisonment, all but 18 months suspended, and 4 years probation for theft; 364 days concurrent for assault; 9 months concurrent for violating the protection from abuse order; and 4 months concurrent for violating the conditions of release.

## II. DISCUSSION

[¶ 5] On appeal, Falcone contends that the evidence was insufficient to support the jury's determinations that 29 Daggett Street was Fasulo's residence on April 6, 1998, and that his entry of the Daggett Street yard constituted an entry of the residence. "When reviewing the sufficiency of the evidence supporting a conviction, we review the evidence in the light most favorable to the jury's verdict to determine whether a jury could rationally find beyond a reasonable doubt every element of the offense charged." *State v. Roussel,* 2000 ME 185, ¶ 8, 760 A.2d 1062. *See also State v. Gray,* 2000 ME 145, ¶ 25, 755 A.2d 540, 546.

[¶ 6] Falcone initially contends that 29 Daggett Street was not Fasulo's residence on April 6, 1998. Viewed in the light most favorable to the jury's verdict, a fair reading of the conditions of release establishes that Falcone "was not to return to [Fasulo's] residence" whether or not Fasulo was home. Although Falcone contends that Fasulo was not living there on that date, Fasulo testified that she was temporarily staying with her parents out of fear of Falcone's future conduct. No evidence demonstrated that Fasulo had abandoned her Daggett Street residence or that she intended to live with her parents permanently. Consequently, the evidence was sufficient to support the jury's determination that 29 Daggett Street was Fasulo's residence.

[¶ 7] Falcone also contends that his entry of Fasulo's yard did not constitute an entry of her residence. Pursuant to Falcone's narrow interpretation of residence, neither the conditions of release nor the protection from abuse order would prevent him from entering Fasulo's yard and sitting on her lawn near her front door. This interpretation, however, con-

travenes the express statutory purpose of protecting the victim. *See* 19–A M.R.S.A. § 4001(2) (1998) (stating that one of the purposes of protection from abuse orders is to "allow family and household members who are victims of domestic abuse to obtain expeditious and effective protection against further abuse so that the lives of the nonabusing family or household members are as secure and uninterrupted as possible"). *See also* 15 M.R.S.A. § 1002 (Supp.1999) (stating that one of the purposes of the bail code, which contains the statutory provisions on conditions of release, is to "reasonably ensure the safety of others in the community"). It is reasonable to infer that the Legislature, when enacting the conditions of release statute, and the District Court, when ordering Falcone "to not return to [Fasulo's] residence," recognized that no victim would feel "safe" or "secure" if the law permitted a defendant to stand within the victim's fenced yard despite the protection order and release conditions. Accordingly, neither the Legislature nor the District Court could have intended the narrow definition Falcone urges us to adopt here.

[¶ 8] By analogy, cases discussing curtilage in the context of Fourth Amendment searches provide guidance as to what constitutes a residence. We have defined curtilage as "the land immediately surrounding and associated with the home." *State v. Cloutier,* 544 A.2d 1277, 1279 (Me. 1988). We have also identified four factors in determining whether a certain area falls within a home's curtilage: "(1) proximity of area claimed to be curtilage to the home; (2) whether area claimed to be curtilage is included within an enclosure surrounding the home; (3) nature of the uses to which the area is put; and (4) steps taken by the resident to protect the area from observation by people passing by." *State v. Boyington,* 1998 ME 163, ¶ 7, 714 A.2d 141, 143 (quoting *State v. Cayer,* 617 A.2d 208, 209 (Me.1992)). The law extends Fourth Amendment protection against warrantless searches to areas located within the curtilage of a residence. *See id.* ¶ 6, 714 A.2d at 143 (citing *Cloutier,* 544 A.2d at 1279).

[¶ 9] Viewed in the light most favorable to the jury's verdict, the evidence was sufficient to establish that Falcone entered the Daggett Street residence when he jumped the fence and entered the yard. An entry into the curtilage is an entry into the residence. *See, e.g., United States v. Dunn,* 480 U.S. 294, 300, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987) (stating that "the extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself"). If Fasulo has a right to prevent the government from conducting a warrantless search within her fenced yard, she certainly should enjoy safety and protection from Falcone within that same area.

The entry is:

Judgment affirmed.