2001 ME 85

**STATE of Maine**

v.

**Janice PARSONS.**

Supreme Judicial Court of Maine.

Submitted on Briefs: April 24, 2001.
Decided: May 22, 2001.

R. Christopher Almy, District Attorney, Michael P. Roberts, Deputy Dist. Attorney, C. Daniel Wood, Asst. Dist. Attorney, Bangor, for State.

Glen L. Porter, Esq., Eaton, Peabody, Braford & Veague, P.A., Bangor, for defendant.

Panel: WATHEN, C.J., and RUDMAN, CLIFFORD, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Janice Parsons appeals from a judgment entered in the Superior Court (Penobscot County, *Mead, C.J.*) following a jury verdict finding her guilty of two counts of theft by unauthorized taking (Class B) in violation of 17–A M.R.S.A. §§ 353(1) & 362(2)(A) (1983 & Supp.2000). Parsons contends that the evidence was insufficient to support the jury's finding that the value of the property taken exceeded $10,000 for each theft count, and that the evidence was insufficient to support the jury's verdicts because the State presented no direct evidence of Parsons' exclusive possession of the property. We affirm the judgment.

## I. CASE HISTORY

[¶ 2] Janice Parsons was elected town clerk for the Town of Etna in March 1996. Prior to her election, Parsons had received no formal training in either accounting or bookkeeping, and she had never held an employment position that involved depositing Town funds into a bank account, reconciling bank account records, handling real property tax records, or preparing documents for year-end tax audits. In her newly elected position, however, Parsons explained that she alone handled all money coming into the Town, provided receipts for sums paid, placed the funds in a safe, brought the money to the bank, and compiled certain Town financial records and reports. As a result of her inexperience, Parsons stated that she had difficulty in compiling the Town's records. In early December 1996, Parsons was asked to redraft her initial reports in preparation for an upcoming Selectmen's meeting with the Town auditor.

[¶ 3] Parsons worked on the redrafts during the afternoon of December 30, 1996. When she left the Etna Town Office, all of the financial records remained out on various desks and tables so she could resume her work the next morning. Later that day a fire swept through the Town Office. Destroyed, or partially destroyed, in the fire were some of the Town's treasurer's cash reports, treasurer's receipts, and tax collector's receipts; the treasurer's cash book; and certain DMV registrations, bank statements, and inventory sheets with excise tax forms. In addition, the evidence indicates that Parsons discarded copies of some of the destroyed records.

[¶ 4] Stewart Jacobs, a fire investigation supervisor with the State Fire Marshall's Office, examined the scene and concluded that two separate fires had been set and that the fires were the result of an intentional act. Parsons denied setting the fires.

[¶ 5] As a result of the fire and subsequent allegations generated by audits of Town finances for 1996 and 1997, Parsons was charged with one count of arson in violation of 17–A M.R.S.A. § 802(1)(A) (1983), and two counts of theft by unauthorized taking of property with a value in excess of $10,000 (Class B) in violation of 17–A M.R.S.A. §§ 353(1) & 362(2)(A) (1983 & Supp.2000).[1] One theft charge related

1. Section 353 provides that:

 1. A person is guilty of theft if he obtains or exercises unauthorized control over the property of another with intent to deprive him thereof.

Section 362 provides, in pertinent part, as follows:

 1. All violations of this chapter shall be classified, for sentencing purposes, according to this section. The facts set forth in this section upon which the

to 1996. The other theft charged related to 1997. The jury returned a verdict of not guilty on the arson charge, but convicted Parsons on both theft charges.[2] This appeal followed.

## II. DISCUSSION

 [¶ 6] When examining the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict to determine whether any trier of fact rationally could find each element of the offense charged proven beyond a reasonable doubt. *See State v. Falcone*, 2000 ME 196, ¶ 5, 760 A.2d 1046, 1048 (quoting *State v. Roussel*, 2000 ME 185, ¶ 8, 760 A.2d 1062, 1064).

[¶ 7] To convict Parsons of theft by unauthorized taking, the jury had to find that the State proved beyond a reasonable doubt that Parsons obtained or exercised unauthorized control over the Town's funds with the intent to deprive the Town of those funds. *See* 17–A M.R.S.A. § 353(1); *State v. Hernandez*, 1998 ME 73, ¶ 11, 708 A.2d 1022, 1026. To support a conviction on the charge of Class B theft, the State also had to prove beyond a reasonable doubt that the value of the missing funds subject to each charge exceeded $10,000. *See* 17–A M.R.S.A. § 362(1) & (2)(A).

[¶ 8] Parsons first contends that the evidence was insufficient to support the jury's finding that the funds taken in each year exceeded $10,000. To support her assertion, Parsons contends that the statements

made by the State's experts were so inconsistent as to render their testimony incredible and unreliable, and thus that no jury could rationally rely on their testimony to support the conviction. Despite Parsons' assertion, the evidence was sufficient to support the jury's finding.

[¶ 9] The State presented three experts to address the amount of missing funds. The first expert, a senior auditor from the State of Maine Department of Audit's Municipal Bureau, reported that in 1996 and 1997, the Town experienced respective unidentified deficiencies of approximately $22,000 and $14,000. The second expert, a certified fraud examiner with the Attorney General's Office, reported that the Town's cash deposits decreased substantially in 1996 and 1997 and then achieved more normal levels in 1998, and that the Town's deposit records indicated unidentified deficiencies of $22,000–$40,000 in 1996 and $14,000–$30,000 in 1997. The third expert, a self-employed certified fraud examiner and internal auditing consultant, testified that the Town's excise tax revenues decreased approximately 22% in 1996 and 1997, and that approximately $16,000 in automobile registrations were not reflected in the Town's bank accounts in 1997.[3]

[¶ 10] On cross-examination, each of the experts qualified his report to some extent. As such, the experts admitted that they were unable to determine the exact amount of revenue missing or the precise source for the missing revenue. Never-

---

classification depends shall be proved by the State beyond a reasonable doubt.
 **2.** Theft is a Class B crime if:
 **A.** The value of the property or services exceeds $10,000 ....

**2.** Parsons was sentenced to five years imprisonment with all but nine months suspended, four years probation, and was ordered to pay $40,000 in restitution.

**3.** Each expert utilized a slightly different methodology in conducting his analysis. The first expert reviewed the Town's prior audits to determine the amounts and sources of revenue received by the Town, the second expert focused on the Town's resources from 1995 through 1998 as reflected in the Town's bank and deposit records, and the third expert performed a comprehensive excise tax analysis.

theless, the experts testified that they were confident as to the accuracy of the estimated amounts provided.

[¶ 11] Although Parsons is correct that all three witnesses testified on cross-examination that they could not determine a specific amount or source for the missing revenue, the jury presumably accepted the witnesses' testimony that money was taken. *See State v. Black*, 2000 ME 211, ¶ 17, 763 A.2d 109, 113–14 (noting that the weight accorded the evidence and determinations of witness credibility fall within the trier of fact's exclusive province); *State v. Maizeroi*, 2000 ME 187, ¶ 17, 760 A.2d 638, 644 (stating that it is the factfinder's duty "to reconcile conflicting testimony, determine its relative weight and decide what part of the testimony is credible and worthy of belief") (citation omitted). Based on the experts' testimony, the jury could reasonably conclude that the amount of money taken exceeded $10,000 in each year. *See State v. Ardolino*, 1997 ME 141, ¶ 20, 697 A.2d 73, 80 (noting that a conviction may be grounded on circumstantial evidence, and the jury is permitted to draw all reasonable inferences from the State's presentation of circumstantial evidence).

[¶ 12] Relying on *State v. Durgan*, 467 A.2d 165 (Me.1983), Parsons next asserts that the evidence was insufficient to support the verdicts because the State provided no direct evidence that she had exclusive possession of the funds. In *Durgan*, we noted that when the State's evidence in a theft case is entirely circumstantial, the State bears the additional burden of producing evidence "that establishes beyond a reasonable doubt that the defendant *was or had been at one time* in exclusive possession of the recently stolen property." *Id.* at 167 (emphasis added). Exclusive possession may be established by evidence of either actual possession or constructive possession of the property at issue. *See id.* Actual possession means that the defendant "has actual physical possession" of the property, whereas constructive possession requires only a showing that the defendant has "dominion, authority or control over" it. *State v. DePhilippo*, 628 A.2d 1057, 1060 (Me.1993).

[¶ 13] In reality, this is not a constructive possession case. Parsons' actual physical possession of all Town revenue in her position as town clerk is sufficient to establish her exclusive possession of the missing funds. To that effect, Parsons testified that only she: (1) handled all the money coming into the Town; (2) provided receipts for monies paid to the Town; (3) put the funds in the safe and brought the money to the bank; and (4) received the Town's bank statements. This evidence establishes that Parsons "was, or had been at one time," in actual physical possession, and hence exclusive possession, of the missing funds. *Durgan*, 467 A.2d at 167.[4]

[¶ 14] Accordingly, viewed in the light most favorable to the State, the evidence was sufficient to prove beyond a reasonable doubt that Parsons had taken property of the Town of Etna in 1996 and 1997, with a value exceeding $10,000 in each year, and that Parsons had exclusive possession of such property and had intended to deprive the Town of the property.

---

4. Parsons contends that the record fails to support an exclusive possession finding because it contains no evidence that she exercised dominion or control over the funds. Accordingly, Parsons asserts that the State has failed to prove beyond a reasonable doubt her constructive possession of the funds. However, given Parsons' own testimony that she had actual physical possession of the property in her position as town clerk, we need not consider whether the elements of constructive possession are supported in the record.