STATE OF MAINE  
PENOBSCOT, SS.

SUPERIOR COURT  
CRIMINAL ACTION  
Docket No. CR-04-988

JLH -PEI - 12|15|05

State of Maine

v.

Order (Motion to Suppress)

Aaron K. Watt

FILED & ENTERED  
SUPERIOR COURT  

DEC 1 5 2005  

PENOBSCOT COUNTY

Hearing on the pending motion to suppress was held on September 15, 2005. The defendant was present with counsel. The court has considered the parties' post-hearing written arguments. Through his motion, the defendant challenges the legality of several intrusions into his liberty interests effected by officers investigating suspected illegal drug activity. The investigative efforts generated physical and testimonial evidence. For the reasons stated below, the court concludes that the evidence obtained by the police flowed from an initial illegal detention, and for that reason, the court grants the motion.

On the morning of July 19, 2004, Brewer Police Department Sergeant Martin, who was on uniformed routine patrol, received information from the Bangor Police Department about the impending possibility of domestic violence involving one Brandy Lyons. Martin was familiar with Lyons and had recently received intelligence that included information that her boyfriend, Norman Hightower, was suspected to be involved in illegal drug activity. Martin saw Lyons walking on Wilson Street in the direction of the Twin City Motel. Martin drove her to the hotel, where Lyons told Martin that she was staying in room 114. Lyons exited Martin's cruiser and went into that room. At some later point, Martin saw Hightower himself leave room 114. Martin left the motel premises.

Several hours later, at approximately 11:00 a.m., Sergeant Martin returned to the motel and walked into the registration area to try to find out who had been staying in room 114, because he thought those people might have "intelligence value." The motel owner, John Robinson, told Martin that the room was registered to the defendant, Aaron

1

Watt. Robinson also advised Martin that the room had been booked for the previous night, and checkout time was 11:00 (in other words, just about the time when Martin was having that conversation with Robinson). Robinson told Martin that he believed that the room had been vacated. Martin asked Robinson for permission to look in the room. After Robinson telephoned the room from the lobby and raised no response, the two walked the short distance to the room. Robinson opened the door, and Martin saw that two people were still inside. Robinson yelled into the room, telling the occupants that checkout time had passed and that they needed to leave. Robinson and Martin returned to the lobby. From there, Martin was able to see two people exit room 114 through an exterior door and walk around the far end of the motel building toward the street. Martin drove his vehicle to intercept them. He patted down both men, one of whom was Hightower. Martin recovered a bag of marijuana from Hightower and a knife from the other person. Martin released both men and returned to the motel lobby.

When Martin re-entered the lobby, he saw a person checking out at the registration desk. Because Robinson previously showed Martin a copy of the defendant's driver's license, Martin recognized the person as the defendant. Martin asked the defendant if he was Aaron Watt, and the defendant replied in the affirmative. Martin then told the defendant that he (Martin) had just seized marijuana from one of the occupants of the room that he (the defendant) had let. Martin asked the defendant if there were any drugs on him. The defendant responded in the negative. Martin then asked the defendant if he would show him the contents of this pockets. When Martin made this request, he touched the area of the defendant's pant pockets.[1] The defendant reached into his pocket and produced an innocuous item (a bag of potato chips). Martin repeated his question to the defendant and asked if he had any drugs on his person. At that point, the defendant said that he did. The defendant then removed a number of items, including a crumpled ball of metal foil. When Martin asked the defendant were the drugs were, the

---

[1] In its written argument, the state suggests that Martin touched the defendant only later in the process, after the defendant told Martin that he did have drugs on his person. Martin testified on cross-examination, however, that he initiated that physical contact when he asked the defendant to show him (Martin) what he (the defendant) had in his pockets. The court construes this to refer to the initial request.

defendant said he had none. Martin then unwrapped the foil ball and found something that appeared to be marijuana.

Martin then requested that Watt accompany him to room 114. There, Martin learned from the defendant that he had used marijuana outside of the room during his stay there and that the defendant's belongings were now in the defendant's vehicle. The investigation progressed to the point where the defendant admitted to Martin that there was marijuana and a firearm in the vehicle. Two other Brewer police officers arrived at the motel room. They searched the vehicle and found the contraband.

The dispositive issue on the motion at bar is whether Martin had seized the defendant during the encounter in the motel lobby. The state contends that, while Martin and the defendant were in the motel lobby, Martin had not seized or detained the defendant but that he developed a proper basis to do so when the defendant told the officer that he had drugs on his person. The state does not argue that Martin had any basis to seize the defendant prior to that moment.

A seizure for fourth amendment purposes "occurs when an office, by a show of authority, in some way restrains a citizen such that he is not free to walk away. The test for whether a seizure has occurred is an objective one, i.e., whether a reasonable person would have believed that he was not free to leave." *State v. Patterson*, 2005 ME 26, ¶ 10, 868 A.2d 188, 191 (citation and internal punctuation omitted). The court concludes that the nature and quality of Martin's contact with the defendant in the motel lobby would have led a reasonable person in the defendant's shoes to conclude, at least by the time the defendant told Martin that he had drugs on his person, that he was not free to leave the officer's presence. Each of Martin's questions and statements to the defendant represented an escalating series of steps that led to a reasonable apprehension of a detention. Martin, who was in uniform, initiated the contact by asking the defendant if he was Lloyd Watt. This would suggest to someone in the defendant's circumstances that the officer had conducted some background investigation about him.

After telling the defendant that he had seized drugs from someone who had stayed in the room that was registered to him, Martin then asked the defendant the pointed question of whether he had any drugs in his possession. This combination of communications would make clear to a reasonable person that the officer had conducted

a meaningful investigation of drug activity and that the officer suspected the defendant of participation in that enterprise. Martin then made it evident that he intended to pursue that suspicion, when he asked the defendant to produce the contents of his pockets. Any suggestion that this constituted a request is undermined by the officer's decision to make physical contact with the defendant: he touched the area of the defendant's pants pockets, converting what might arguably, in the abstract, appear to be a request into something closer to an instruction. When the defendant's compliance did not produce incriminating evidence, Martin again asked the defendant if he had drugs on his person. The defendant's response -- that he did -- signals the moment when the state contends that Martin developed a basis to detain the defendant. However, for the reasons noted above, Martin had seized the defendant prior to that point.

The state does not argue that evidence developed subsequent to any initial illegality is something other than fruit of the poisonous tree. Even if the state has preserved such a claim, however, the court further finds that the inculpatory evidence subsequently developed by Martin flowed directly from the initial illegal detention and constitutes fruit of the poisonous tree. *See State v. Boyington*, 1998 ME 163, ¶ 9, 714 A.2d 141, 144 (in the post-illegality inquiry, distinguishing between evidence that is obtained by exploiting the illegality, from evidence that is obtained by a means "sufficiently distinguishable to be purged of the primary taint."). Here, while the defendant was detained without cause, he answered one of Martin's questions by stating that he was in possession of drugs. Martin developed that basis for ongoing detention, as the state identified that justification, as an integral part of the seizure that the court now concludes violated the defendant's fourth amendment rights. Martin continued to ask the defendant about the location of those drugs that the defendant admitted were in his possession, and that ongoing inquiry led them back to room 114. In the defendant's presence, Martin searched the room, including areas under the beds and in drawers. Combining the defendant's admission to drug possession with the absence of any drugs in the room itself, Martin inferred that the drugs would be found in the defendant's vehicle. A search confirmed that this conclusion was correct. This sequence of events, however, flowed directly from the information that Martin developed after he had seized the defendant in the motel lobby but before there existed a proper basis for that detention.

4

The resulting evidence was not obtained by a means that is distinguishable from the earlier unlawful detention.

The entry shall be:

For the foregoing reasons, the defendant's motion to suppress is granted. The court suppresses evidence obtained from the defendant and the premises of the Twin City Motel beginning at the point when the defendant produced items from his pockets in the motel lobby in the presence of Sergeant Martin.

Dated: December 15, 2005

_____
Justice, Maine Superior Court

5

Penobscot County Superior Court

State of Maine v Aaron K. Watt
CR-2004-988

Order/Motion to Suppress

Justice: Jeffrey L. Hjelm

State's Attorney:
Patrick Larson, Ass't District Attorney
Office of the District Attorney
97 Hammond Street
Bangor, ME 04401

Defense Attorney:
Terence Harrigan, Esq.
- Vafiades, Brountas & Kominsky
PO Box 919
Bangor, ME 04402-0919