1999 ME 187

**STATE of Maine**

v.

**Emile A. COLLIN**

Supreme Judicial Court of Maine.

Submitted on Briefs Oct. 28, 1999.
Decided Dec. 17, 1999.

Neale T. Adams, District Attorney, John M. Pluto, Dep. Dist. Atty., Caribou, for State.

William J. Smith, Van Buren, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

RUDMAN, J.

[¶ 1] Emile A. Collin appeals from the judgment of conviction entered in the Superior Court (Aroostook County, *Pierson, J.*) on a jury verdict of guilty of theft pursuant to 17–A M.R.S.A. § 353 (1983 & Supp.1999). Collin contends that (1) the trial court erred by denying his request to voir dire the jury about bias arising from Collin's criminal conduct in Canada, (2) the trial court failed to properly instruct the jury, and (3) evidence was insufficient to support the jury verdict. We disagree with these contentions, and affirm the judgment.

## I. BACKGROUND

[¶ 2] The jury rationally could have found the following facts.[1] In May 1994, Fraser Paper Ltd. engaged Gallant Enterprises of Edmundston, New Brunswick, Canada to remove scrap materials generated during Fraser's cleanup of its Madawaska mill yard. Gallant directed its driver, Yvon Dufour, to take away scrap only if it was specifically marked for removal or if he was told to remove the items by the Fraser employee in charge of the cleanup, Jean–Paul Cyr.

[¶ 3] During the clean up, Collin was seen rummaging through the scrap metal

---

1. This appeal marks the second appearance of Collin before this Court concerning his behavior in May 1994. *See State v. Collin,* 1997 ME 6, 687 A.2d 962. In *Collin I,* we held that there was no jurisdictional nexus to permit convicting Collin for theft by reception of stolen property. *Id.* Unlike his first appeal, however, the instant appeal does not address jurisdictional issues. Collin has only been found guilty of theft by unauthorized control, 17–A M.R.S.A. § 353, and the jury found this crime to have been committed in Maine based on the facts adduced at the new trial.

which was in the process of being removed, purportedly looking for surplus items to purchase.[2] Cyr acknowledged that when Collin was in the scrap yard during these scavenging expeditions, he spoke to Cyr and to Dufour more than once; and on at least one occasion, the three men spoke together. In one of these conversations, Cyr told Collin that a large brass pump was partially buried and, therefore, not cataloged in Fraser's computer system. Cyr believed nobody would notice that it was gone because it was not in the computer. Additionally, the three men agreed that the pumps in general would be worth "a lot of money." No Fraser supervisor, however, authorized removal of any of the large pumps in the mill yard.

[¶ 4] Dufour removed the brass pump in question from Fraser's premises and brought it to Dufour's uncle's residence in Canada. Collin dismantled the pump into three pieces, and transported those pieces to a scrap yard in the Province of Quebec. The pump sold to the Quebec scrap yard weighed over 6,000 pounds and was about six feet tall, or the size of a compact car. When Gallant discovered the pump had been taken to Quebec, the trucking company had it brought back to Edmundston and contacted Fraser about the incident. Soon thereafter, the pump was returned to Fraser property in Madawaska. Collin admitted during a subsequent investigation that

he and Dufour had previously agreed to split equally the proceeds from the sale of the pump after paying Cyr $200 (Canadian) for his assistance. Cyr asserted that Collin told him that the $200 was "more or less hush money."

[¶ 5] Collin was charged with theft, tried by jury in June 1995, and found guilty of theft. We vacated Collin's conviction. *See State v. Collin*, 1997 ME 6, 687 A.2d 962 [*Collin I* ]. Collin was re-tried on the same charge in November 1997 and once again found guilty of theft; Collin's sentence was 30 days in jail and a $2,000 fine.

## II.  VOIR DIRE OF PROSPECTIVE JURORS

[¶ 6] Collin requested that the Superior Court question prospective jurors whether they would be biased if they heard evidence about possible criminal activity undertaken by Collin in Canada. In *Collin I,* we found that the jury may have improperly used events in Canada as evidence to convict the defendant. To protect against this possibility in the new trial, the court asked prospective jurors during voir dire if they harbored any bias concerning Collin's activities in Canada.[3]

[¶ 7] M.R.Crim. P. 24(a) governs the voir dire process.[4] The trial court has broad discretion over the conduct of voir dire, and the court's decisions in that area "will be upheld absent abuse of that

---

2. Fraser permitted its employees the first opportunity to buy any surplus materials it wanted to jettison. Fraser employeës, however, had to receive authorization from the company before removing surplus.

3. The Superior Court's voir dire question was as follows:

   This case may involve evidence regarding events which occurred in Canada and will involve evidence regarding events which occurred also in the United States. There may be some intermingling of the evidence regarding actions in Canada. This is a very general question; but the fact that there may be testimony regarding events in Canada, is there anybody in the panel that feels because there may be testimony about events in Canada that somehow would affect their ability to fairly judge the case?

None of the prospective jurors responded affirmatively to the court's question, and the voir dire proceeded without incident.

4. The rule reads:

   **RULE 24.  TRIAL JURORS**
   **(a) Examination of Jurors.** The parties or their attorneys may conduct the examination of the prospective jurors unless the court elects to conduct an initial examination itself. If the court elects to conduct an initial examination, when that examination is completed the court shall permit the parties or their attorneys to address additional questions to the prospective jurors on any subject which has not been fully covered in the court's examination and which is germane to the jurors' qualifications.
   M.R.Crim. P. 24(a).

discretion." *State v. O'Hara*, 627 A.2d 1001, 1003 (Me.1993). We have long permitted the trial court to conduct the voir dire itself. *See State v. Bernier*, 486 A.2d 147, 150 (Me.1985); M.R.Crim. P. 24(a). Areas of potential juror bias should receive special attention during voir dire, but the trial court has the discretion to appropriately craft questions probing for juror bias. *Id.* at 149. In the past, we have upheld voir dire queries which addressed potential juror bias more generally than the defendant wished. *See State v. Stoddard*, 1997 ME 114, ¶¶ 8–9, 696 A.2d 423, 426–427. "Although the court's questions were generalized, they were sufficient to reveal any bias." *Id.* at ¶ 9, 427.

[¶ 8] Collin asserts that the trial court erred by rejecting his proposed voir dire on potential bias due to his criminal conduct in Canada. The Superior Court's voir dire inquiry was more ambiguous than the proposed voir dire question of the defendant on this subject. The court did, however, directly address Collin's concern about juror bias as a result of his behavior in Canada; the court's question was sufficient to reveal bias concerning Collin's behavior in Canada. On the record before us, it is evident that the trial court did not exceed the bounds of its discretion in refusing to voir dire the jury in the exact manner requested by Collin.

## III. INSTRUCTIONS TO THE JURY

[¶ 9] Collin requested that the Superior Court instruct the jury on the precise legal definition of the term "unauthorized control" and on the defense of mistake of fact negating his specific intent to commit theft. The Superior Court refused to instruct the jury on either topic, and Collin asserts that this decision was in error. We disagree.

[¶ 10] Unauthorized control is an element of the crime of theft, and the court properly instructed the jury that they needed to find that Collin had exercised unauthorized control of the pump to be found guilty. *See* 17–A M.R.S.A. § 353(1). Collin's requested instruction sought an additional explanation of the term's meaning; definition of "unauthorized control," however, is not legally mandated. A court is under no obligation to give a defendant's proposed instructions as long as "the instructions [the court] gave were legally correct and adequately covered the essential points." *State v. Rich*, 395 A.2d 1123, 1133 (Me.1978) (citations omitted). This discretion remains even when a defendant's proposed instructions are legally correct. *Id.; State v. Weese*, 424 A.2d 705, 710 (Me.1981). The Superior Court gave legally correct instructions which appropriately explained the law to the jury in the context of this particular case.

[¶ 11] Collin's other assignment of error in the jury instructions concerns the defense of mistake of fact. *See* 17–A M.R.S.A. § 36 (1983).[5] When a defendant raises a defense which has been

---

5. The relevant statute, 17–A M.R.S.A. § 36, reads in full:

**36. Ignorance or mistake**

**1.** Evidence of ignorance or mistake as to a matter of fact or law may raise a reasonable doubt as to the existence of a required culpable state of mind.

**2.** Ignorance or mistake as to a matter of fact or law is a defense only if the law provides that the state of mind established by such ignorance or mistake constitutes a defense.

**3.** Although ignorance or mistake would otherwise afford a defense to the crime charged, the defense is not available if the defendant would be guilty of another crime had the situation been as he supposed.

4. It is an affirmative defense if the defendant engages in conduct which he believes does *not legally constitute a crime* if:

**A.** The statute violated is not known to the defendant and has not been published or otherwise reasonably made available prior to the conduct alleged; or

**B.** The defendant acts in reasonable reliance upon an official statement, afterward determined to be invalid or erroneous, contained in:

**(1)** A statute, ordinance or other enactment;

**(2)** A final judicial decision, opinion or judgment;

**(3)** An administrative order or grant of permission; or

supported by competent evidence, the trial court must instruct the jury that the State needs to disprove the defense to convict. *See State v. Hernandez*, 1998 ME 73, ¶ 7, 708 A.2d 1022, 1025. In determining if the facts at trial put a defense in issue, we consider the evidence in the light most favorable to the defendant. *See State v. O'Brien*, 434 A.2d 9, 13 (Me.1981). The trial court, however, need not instruct the jury on "a defendant's theory when that theory represents a method for generating reasonable doubt ." *Hernandez*, ¶ 7, 708 A.2d at 1025. The court must instruct on ignorance or mistake of a matter of fact or law only if (1) the defense is applicable to the crime charged and (2) the facts at trial raise the defense. *See id.*

[¶ 12] Section 36 applies to specific intent crimes, of which theft by unauthorized taking is one as it requires an "intent to deprive" a rightful owner of property. 17–A M.R.S.A. § 353(1). Consequently, mistake of fact could be a defense in this case. Regardless, the facts adduced at trial did not raise the defense, and Collin was not entitled to an instruction on mistake of fact. The evidence supports a factual conclusion that Collin conspired with Cyr and Dufour to deprive Fraser of its property and that the three men hatched their felonious plan while on the Fraser grounds in Madawaska. Collin intended to steal the pump at that time and he then acted upon that intention. On these facts, Collin's assertion of mistake of fact was not supported by competent evidence. *Cf. State v. Dansinger*, 521 A.2d 685, 689 n. 6 (Me. 1987) (holding that defendants' admission

that they knew they were not authorized to enter property vitiated their defense of mistake of fact to criminal trespass). Therefore, the trial court did not exceed the bounds of its discretion by refusing to instruct the jury as requested in Collin's proposed instruction on mistake of fact.

## IV. SUFFICIENCY OF THE EVIDENCE

[¶ 13] Finally, Collin challenges his conviction for theft based on the alleged insufficiency of the evidence. When considering the sufficiency of the evidence, we evaluate the evidence presented in the light most favorable to the prosecution to determine whether the jury rationally could find, beyond a reasonable doubt, every element of the offense charged. *See State v. Ardolino*, 1997 ME 141, ¶ 20, 697 A.2d 73, 80; *State v. Barry*, 495 A.2d 825, 826 (Me.1985). In the instant case, Collin purposefully conspired with Cyr and Dufour to purloin the Fraser pump while all three men were in the United States. The jury heard ample evidence to find Collin guilty either as a principal or as an accomplice to theft by unauthorized taking. Upon careful review of the record we find no merit in Collin's argument the evidence was insufficient to convict him.

The entry is:

Judgment affirmed.

---

**(4)** An official interpretation of the public officer or body charged by law with responsibility for the interpretation, administration or enforcement of the statute defining the crime. This subsection does not impose any duty to make any such official interpretation.

**5.** A mistaken belief that facts exist which would constitute an affirmative defense is not an affirmative defense, except as otherwise expressly provided.
17–A M.R.S.A. § 36.