2002 ME 165

**STATE of Maine**

v.

**Deborah WILLETTE.**

**Docket No. Cum–02–69.**

Supreme Judicial Court of Maine.

Argued: Sept. 11, 2002.

Decided: Nov. 8, 2002.

G. Steven Rowe, Attorney General, Leanne Robbin, Asst. Atty. General (orally), Augusta, for State.

Caroline J. Gardner, Esq. (orally), Portland, for defendant.

Panel: CLIFFORD, RUDMAN, DANA, and ALEXANDER, JJ.

**CLIFFORD, J.**

[¶ 1] Deborah Willette appeals from a judgment of conviction entered in the Superior Court (Cumberland County, *Crowley, J.*) following a jury's finding that she committed theft by unauthorized taking (Class C) in violation of 17–A M.R.S.A. § 353(1) (1983).[1] Willette contends that the State's evidence was insufficient to prove her guilt beyond a reasonable doubt, and that the court erroneously excluded from evidence two performance evaluations related to her employment. Finding no error and concluding that the evidence is sufficient to support the verdict, we affirm the judgment.

[¶ 2] From the evidence adduced at trial, the jury could have found the following facts. Deborah Willette began working as an assistant clerk of the District Court in Portland in 1979. Over the course of her employment, Willette became a supervisor in the Family Division where her primary responsibility was to handle funds received from cases involving family matters, protection from abuse, and child protection matters. After February of 1997, Willette was also primarily responsible for preparing a single deposit of the funds, mostly filing fees, generated by those cases for the entire civil department.

[¶ 3] When another assistant District Court clerk was observed issuing a handwritten receipt to a litigant filing a case, without entering the transaction in the computer,[2] the Revenue & Collections Manager for the Administrative Office of the Courts began reviewing the Portland District Court records for possible financial discrepancies. During her initial investigation, the Manager discovered that, despite the fact that the observed transaction was not entered in the computer, the daily deposit still balanced. She therefore obtained bank records, which included filmed copies of all deposited checks, and compared them to a computer report detailing the filing fees paid in family cases. The Manager recognized a suspicious pattern: checks for filing fees sent in by *attorneys* were not entered in the computer, but *pro se* transactions were entered as "checks." Thus, the filmed copies of attorneys' checks did not match up with any case or docket number listed by the computer report, and pro se payments did not correspond to any of the filmed copies of checks. Ultimately, however, the amounts reflected by the computer entries matched the amounts shown on the deposit slips because the attorneys' checks were deposited, though not entered in the computer, and pro se litigant cash payments, though not deposited, were recorded as checks.

[¶ 4] The Manager examined the financial transactions recorded in the computer and found the initials "DW," for Deborah Willette, on nearly all of the receipts linked to unrecorded computer transactions. After scrutinizing the court's records in six-month increments, the Manager discovered discrepancies in financial transactions dating back as far as February 1997, but found no similar inconsistencies in either the criminal department or other

---

**1.** 17–A M.R.S.A. § 353(1) provides:
A person is guilty of theft if he obtains or exercises unauthorized control over the property of another with intent to deprive him thereof.

**2.** According to office procedure, every transaction must be entered in the computer system. Following the entry of a financial transaction, the computer produces receipts for both the customer and the court's file, and creates a record of the transaction on a central financial program, which, in turn, compiles master lists of financial transactions for a particular time period. The receipt and record each identify the docket number, the clerk who completed the transaction, and whether the fee was paid by cash or check.

divisions of the civil department of the District Court. The investigation also revealed no discrepancies when Willette was not working, or when another clerk prepared the deposit. Willette was subsequently charged with theft by unauthorized taking.

[¶ 5] During her jury trial, Willette unsuccessfully sought to admit in evidence two employee performance reviews; the first from Willette's supervisor from 1989–1992, and the second from her supervisor from 1995–2000. The jury returned a verdict of guilty and this appeal followed.

## I.

[¶ 6] Willette contends that the evidence was insufficient to support a guilty verdict. She relies on the absence of incriminating eyewitness testimony and the State's inability to directly connect her to the thefts.

[¶ 7] When the defendant challenges the sufficiency of the evidence, we view the evidence in "the light most favorable to the State to determine whether the trier of fact rationally could have found beyond a reasonable doubt every element of the offense charged." *State v. Turner,* 2001 ME 44, ¶ 6, 766 A.2d 1025, 1027. A conviction can be based solely on circumstantial evidence. *See State v. Dill,* 2001 ME 150, ¶ 13, 783 A.2d 646, 651; *see also State v. Benner,* 654 A.2d 435, 437 (Me. 1995) ("The factfinder is allowed to draw all reasonable inferences from the circumstantial evidence.").

[¶ 8] To establish a violation of 17–A M.R.S.A. § 353, the State must prove that Willette (1) obtained or exercised unauthorized control (2) over the property of another (3) with intent to deprive the owner of that property. *State v. Hernandez,* 1998 ME 73, ¶ 11, 708 A.2d 1022, 1026. Willette relies on our decision in *State v.*

*Durgan,* 467 A.2d 165 (Me.1983), an embezzlement case, where we stated that in a case of theft proven by circumstantial evidence, the State must prove the defendant "exclusively possessed" the stolen property. Willette contends that because there is no evidence of her exclusive possession of the property, the evidence is insufficient to prove the theft.

[¶ 9] The requirement of proof of exclusive possession, however, is more appropriately applied to theft cases involving the statutory presumption set forth in 17–A M.R.S.A. § 361(2) (1983), which provides:

> 2. Proof that the defendant was in exclusive possession of property that had recently been taken under circumstances constituting a violation of this chapter ... give[ ] rise to a presumption that the defendant is guilty of the theft ... of the property, ...

Section 361(2) applies when the State relies, at least in part, on the defendant's possession of recently stolen property to establish the defendant's connection to, and thus commission of, the theft. *See, e.g., State v. Ketchum,* 1997 ME 93, ¶¶ 12, 13, 694 A.2d 916, 918–19 (evaluating whether defendant "possessed" eleven stolen figurines). Such possession allows the factfinder to infer the defendant stole that property. *Id.* ¶ 12. Proof beyond a reasonable doubt that the defendant exclusively possessed the property is a necessary prerequisite for applying section 361(2). *Id.*

[¶ 10] Although we have previously evaluated whether the State fulfilled *Durgan's* exclusive possession requirement in an embezzlement case, *State v. Parsons,* 2001 ME 85, ¶ 12, 773 A.2d 1034, 1037, it is inappropriate to do so here because the State does not rely on Willette's possession of recently stolen property to connect her

to the theft. Rather, the evidence connecting Willette to the theft includes the following: (1) her access to cash and checks coming into the District Court; (2) her responsibilities to make computer entries, provide receipts, and make daily bank deposits; (3) the fact that her login name appears on receipts linked to missing money; and (4) that the discovered irregularities are all connected to transactions entered by or under the control of Willette, no similar discrepancies were discovered for those times when Willette was out of the office, and no discrepancies existed in other departments of the District Court. Moreover, not requiring the State to prove that the defendant exclusively possessed the misappropriated property in embezzlement cases is consistent with authority in other jurisdictions. *See State v. Sutton,* 53 N.C.App. 281, 280 S.E.2d 751, 754 (1981); *Hovee v. State,* 596 P.2d 1127, 1131 (Wyo. 1979); *Evans v. State,* 343 So.2d 557, 560 (Ala.Crim.App.1977). The evidence in this case is sufficient to support the jury's finding that Willette was guilty of the theft. *Hernandez,* 1998 ME 73, ¶ 2, 708 A.2d at 1026–27.

## II.

[¶ 11] Willette also contends that the court erroneously excluded from evidence two evaluations of her performance as an employee. We review a trial court's decision to exclude evidence for an abuse of discretion or clear error. *State v. Tomah,* 1999 ME 109, ¶ 7, 736 A.2d 1047, 1050.

[¶ 12] The trial court excluded both performance reviews as irrelevant. Willette offered the first evaluation to prove that she was a good employee. Because the evaluation pertains to Willette's employment conduct prior to 1992, long before the thefts occurred, its exclusion by the court was not error.

[¶ 13] The second evaluation, prepared in January of 1998, was closer in time to the thefts, but also was also properly excluded. The evaluation is hearsay, and Willette did not argue at trial its admissibility as either a business record, M.R. Evid. 803(6), or an admission by a party opponent. M.R. Evid. 801(d)(2).[3] Moreover, Willette's supervisor testified in the case and could have been asked about her observations of Willette's performance as a clerk.

[¶ 14] Willette also contends that the performance evaluations are character evidence offered to show her reputation for honesty. "Evidence of a person's character or a trait of good character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except ... evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same." M.R. Evid. 404(a). Although Willette argues the performance evaluations exemplify her character, such evidence is limited to proof by reputation testimony.[4] *See State v. Wells,* 423 A.2d 221, 227 (Me.1980).

[¶ 15] In limited circumstances, where character is an essential element of a charge, "proof may also be made of specific instances of that person's conduct." M.R. Evid. 405(b). Even assuming, *ar-*

---

3. Admissions by government employees in criminal cases generally do not fall within the section 801(d)(2) exception to the hearsay rule. *State v. Therriault,* 485 A.2d 986, 992 (Me.1984).

4. Rule 405(a) provides, "[i]n all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation. On cross-examination, inquiry is allowable into relevant specific instances of conduct." M.R. Evid. 405(a).

*guendo*, that the crime of theft puts Willette's character "in issue," Willette offered the evaluations, not to prove specific instances of Willette's honest conduct, but to show that she was a "good employee." Accordingly, the trial court neither erred nor acted beyond its discretion in excluding the evaluations as character evidence.

The entry is:

Judgment affirmed.