MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2017 ME 148
Docket:      Som-16-416
Argued:      May 10, 2017
Decided:     July 6, 2017

Panel:       SAUFLEY, C.J.,* and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

## STATE OF MAINE

v.

## CLAUDIA G. VILES

JABAR, J.

[¶1]  Claudia G. Viles appeals from a judgment entered by the trial court (Somerset County, *Mullen, J.*) upon a jury verdict finding her guilty of one count of theft by unauthorized taking or transfer (Class B), 17-A M.R.S. § 353(1)(B)(1) (2016), eleven counts of failure to pay tax or file a Maine State tax return (Class D), 36 M.R.S. § 5332(1) (2016), and one count of tampering with public records or information (Class D), 17-A M.R.S. § 456(1)(C) (2016). On appeal, she contends that there was insufficient evidence for the jury to find her guilty of theft by unauthorized taking or transfer and tampering with public records.  We disagree and affirm.

---

   * Although not available at oral argument, Chief Justice Saufley participated in the development of this opinion.  *See* M.R. App. P. 12(a) ("A qualified justice may participate in a decision even though not present at oral argument.").

## I. BACKGROUND

[¶2] Taking the evidence in the light most favorable to the State, the jury rationally could have found the following facts beyond a reasonable doubt. *State v. Troy*, 2014 ME 9, ¶ 3, 86 A.3d 591. From at least 1998 until 2015, Viles was the elected tax collector for the Town of Anson, Maine (the "town"). She was the sole Town employee responsible for registering motor vehicles and collecting the affiliated excise taxes, as well as preparing a treasurer's receipt indicating the amount of taxes collected to deposit at the bank. Although the Town treasurer would confirm that the amount on the treasurer's receipt matched the amount of checks and cash that Viles provided for deposit and would sign the treasurer's receipt, the treasurer did not confirm that the amount indicated for deposit on the treasurer's receipt was supported by vehicle registration forms. Prior to preparing each deposit, Viles kept the cash and checks she collected in a bag that she usually stored in her desk drawer at work; on occasion she was seen taking the bag home. Her deposits were irregular and rarely timely, sometimes occurring as much as three months apart.

[¶3] For most of her tenure as tax collector, Viles tallied the excise taxes and prepared treasurer's receipts for deposit by hand. In September 2014, a

new treasurer implemented "cash receipting" through TRIO, a computer program that reconciled receipts on a daily basis and provided a report that included the total amount of excise taxes entered on vehicle registration forms. On January 19, 2015, the treasurer ran TRIO reports for 2014 in preparation for an annual town financial audit. Upon reviewing a report of excise taxes, the treasurer discovered that the amount of taxes collected was higher than what Viles had provided in deposits. The treasurer asked Viles to provide motor vehicle registration reports and treasurer's receipts to reconcile the conflicting figures, but Viles did not produce those documents. The treasurer then informed Viles, the chairman of the town board of selectmen, and the town auditor about the discrepancy.

[¶4] An investigation by the town auditor revealed that, for tax year 2014, there were shortfalls totaling $90,109.76 in Viles's excise tax deposits. The town requested that the auditor check previous years' records for additional shortfalls. When the treasurer attempted to collect the necessary motor vehicle registrations in order to confirm Viles's reporting of collected taxes, the registration documentation could not be found in the town office. Viles reported that she had removed the documents from the building, and, following her receipt of a letter from the town's attorney insisting that she

return the records, she returned them "piecemeal," but never returned records for 2010.[1] The auditor obtained copies of the registration documents from the State, and after reviewing previous years, found shortfalls for 2013 of $112,491.09; for 2012 of $125,355.35; for 2011 of $110,756.34; and for 2010 of $62,236; and confirmed that the money had not been improperly deposited to other town accounts or mixed up with other deposits.

[¶5]  On September 3, 2015, Viles was indicted by grand jury for one count of theft by unauthorized taking or transfer (Class B), 17-A M.R.S. § 353(1)(B)(1), eleven counts of failure to pay tax or file a return (Class D), 36 M.R.S. § 5332(1), and one count of tampering with public records or information (Class D), 17-A M.R.S. § 456(1)(C).  She pleaded not guilty to all charges.

[¶6]  Following a jury trial held on June 20, 21, and 22, 2016, the jury returned guilty verdicts on all counts.  The trial court sentenced Viles to eight years' imprisonment for Count 1, with all but five years suspended and three years of probation, to run concurrently with nine months' imprisonment each for Counts 2 through 13; as well as $566,257.65 in restitution—$500,948 for

---

[1]  The missing registration documents were never found, despite the execution of a search warrant at Viles's home.

theft of excise taxes and $65,309.65 for economic losses—payable to the town. She timely appeals. *See* M.R. App. P. 2(b)(2)(A).

## II. DISCUSSION

[¶7] Viles contends on appeal that there was insufficient evidence for the jury to find her guilty of (1) theft, because the evidence did not establish that she had taken exclusive possession of stolen money; and (2) tampering with public records, because the State could not prove what type of documents had been tampered with or that the records had been removed. We review each of these arguments in turn, viewing the evidence in the light most favorable to the State, to determine "whether the fact-finder could rationally have found each element of the offense[s] beyond a reasonable doubt." *State v. Reed*, 2013 ME 5, ¶ 9, 58 A.3d 1130 (quotation marks omitted).

A.    Theft by Unauthorized Taking

[¶8] To find Viles guilty of theft by unauthorized taking or transfer, the jury had to find that Viles "obtain[ed] or exercise[d] unauthorized control over the property of [the town] with intent to deprive the [town] of the property," and that the "value of the property is more than $10,000." 17-A M.R.S. § 353(1)(A), (B)(1). Viles's argument relies upon *State v. Durgan*,

6

467 A.2d 165 (Me. 1983), an appeal from a burglary and theft conviction. In *Durgan*, we stated that "where the evidence is entirely circumstantial, to obtain a conviction for burglary or theft, the State must produce evidence that establishes beyond a reasonable doubt that the defendant was or had been at one time in exclusive possession of the recently stolen property." *Id.* at 167. Such a requirement to demonstrate a physical connection at some time between the defendant and the stolen goods was proper in the context of *Durgan*—where the defendant's *only* connection to the goods was his presence in a different room from where the stolen goods were found, and his occupancy of the premises was not exclusive. *See also* 17-A M.R.S. § 361-A(1) (2016).

[¶9] Just three years after *Durgan*, in another burglary case, we ruled that, where there is other evidence of guilt besides an inference arising from exclusive possession, a jury need not rely on the inference alone to establish guilt. *State v. Austin*, 518 A.2d 1042, 1044-45 (Me. 1986). The jury may also consider other available evidence. *Id.* In reaching this conclusion, we interpreted the "and not otherwise" language of M.R. Evid. 303(c) to mean that the permissible inference, by itself, must convince the jury of guilt beyond

a reasonable doubt only when the State relies solely on the inference to prove its case. *Id.*; *see also State v. Carsetti*, 536 A.2d 1121, 1122 (Me. 1988).

[¶10]  In embezzlement cases, we have held specifically that the State is not required to prove that the defendant exclusively possessed the misappropriated property. *State v. Willette*, 2002 ME 165, ¶¶ 8-10, 809 A.2d 617.  An embezzlement case may be proved by other circumstantial evidence. *Id.*

[¶11]  Here, the State did not rely upon Viles's exclusive possession of the stolen funds to prove the theft.  The State's evidence included Viles's access to the incoming cash and checks, her responsibility to record the transactions and prepare receipts for deposit amounts, and discrepancies of the amounts between the transactions and the deposits linked *only* to the transactions for which she alone was responsible.  With this evidence, the State need not prove her exclusive possession of the stolen funds. *Id.*

[¶12]  Contrary to Viles's contentions, there was sufficient evidence for the jury to find each element of theft by unauthorized taking beyond a reasonable doubt.  Testimony at trial established that Viles was the only town employee to accept excise taxes from residents.  Additionally, she was the only employee to prepare the excise taxes for deposit.  In the years 2010 through

2014, deposits of excise taxes fell short by more than $500,000. These discrepancies went undiscovered until a computer program was used in 2014 to perform daily cash receipt reporting of the amounts of excise taxes collected. The discrepancies were not found until the computer program was put into use because Viles underreported the amounts of excise tax revenues she collected for deposit, and the correct amount of excise taxes she collected was never entered in the town's general ledger. Based upon this evidence, and "defer[ring] to all credibility determinations made by the fact-finder," *State v. Hodsdon*, 2016 ME 46, ¶ 8, 135 A.3d 816, we conclude that the jury heard sufficient evidence upon which to find Viles guilty of theft by unauthorized taking pursuant to 17-A M.R.S. § 353(1)(B)(1).

B.    Tampering with Public Records

[¶13]  To convict Viles of tampering with public records, the jury had to find that she "[i]ntentionally destroy[ed], conceal[ed], remov[ed] or otherwise impair[ed] the verity or availability of any such record, document or thing, knowing that [she] lack[ed] the authority to do so."  17-A M.R.S. § 456(1)(C). Again, we conclude that the jury heard sufficient evidence to find every element of the crime charged.

[¶14] The treasurer testified that the motor vehicle registrations were typically kept in a cabinet at the town office. The treasurer tried to find the records to "look at the source documents" to determine where the error in accounting was, but found them missing. Viles told the treasurer that she had taken all of the records out of the building, and only returned them "piecemeal" after the treasurer handed her a letter from the town attorney asking for their return. When the records were returned, several months of records from 2013 and the entire year of records from 2010 were missing.

[¶15] Viles asserts that the treasurer's testimony was not sufficient to prove that the cabinets had ever contained motor vehicle registrations. However, the town administrator testified that he had seen those exact records kept in a locking file cabinet in the office. Based upon the testimony presented at trial, and viewing the evidence and all justifiable inferences in the light most favorable to the State, *see State v. Michaud*, 1998 ME 251, ¶ 18, 724 A.2d 1222, there was sufficient evidence for the jury to find that Viles intentionally removed and made unavailable the town's 2010 motor vehicle registration records, knowing that she did not have the authority to do so.

The entry is:

Judgment affirmed.

Walter F. McKee, Esq. (orally), McKee Law, P.A., Augusta, for appellant Claudia G. Viles

Janet T. Mills, Attorney General, and Leanne Robbin, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Somerset County Unified Criminal Docket docket number CR-2015-1186
FOR CLERK REFERENCE ONLY