STATE OF MAINE                               SUPERIOR COURT
SOMERSET, ss.                                SKOWHEGAN
                                             DOCKET NO. CV-15-020


TOWN OF ANSON,
        Plaintiff


v.                                    ORDER ON PLAINTIFF'S
                                      MOTION FOR SUMMARY JUDGMENT


CLAUDIA G. VILES,
        Defendant

This matter came before the undersigned on Plaintiff's Motion for Summary Judgment filed 7/30/18. Defendant filed its opposition to the Motion for Summary Judgment on 8/21/18, and the Plaintiff filed its Reply on 8/28/18. After reviewing the file, the pleadings the parties have filed with respect to the pending motion, relevant case law, and applicable rules and statutes, the Court enters the following **Order** for the reasons set forth below:

### Background:

1.    The Plaintiff, Town of Anson ("Town"), alleges that the Defendant, Claudia G. Viles ("Viles"), the town's former tax collector, intentionally and knowingly converted town property by misappropriating funds from town residents intended for excise taxes for her own use. Pl.'s Compl. ¶¶ 38-40. The Town's complaint was filed on August 10, 2015, and Viles filed a timely Answer. The parties agreed to a stay of the action because of the possibility of criminal charges against Viles. The stay was granted on August 31, 2015.

2.    Viles was in fact indicted for one count of theft, Class B, eleven counts of failure to pay tax or file a return, Class D, and one count of tampering with public records or information, Class D. Pl.'s Motion for Summary Judgment (hereinafter "MSJ") at 3.

3.    Viles pled not guilty to the charges against her and a three-day jury trial was held June 20-22, 2016. *Id.* Viles was found guilty on all counts. *Id.* The trial court ordered $566,257.65 in restitution, comprised of $500,948.00 for theft of excise taxes and $65,309.65 in economic losses payable to the town. *Id.* Viles was sentenced to eight years' imprisonment with all but five years suspended. *Id.* To the knowledge of the Court she remains incarcerated at this time. On appeal of the jury verdict, Viles argued that there was insufficient evidence for the jury to find

her guilty of theft by unauthorized taking or transfer. Pl's MSJ at 4. The Law Court affirmed the judgment on July 6, 2017.[1]

4. On July 26, 2017, by consent of the parties, this Court lifted the stay in this matter. On October 11, 2017, acting *pro se*, the Town filed a Request for Restitution Order to be Made a Money Judgment pursuant to 17-A M.R.S. § 1330-C, and the clerk signed the Order on October 13, 2017. On November 29, 2017, this Court ordered the parties to "advise the Court in writing how the Order in Docket No. SA-17-319 impacts, or should impact, the processing of the [Town's] claims against [Viles] in this matter." Neither party has complied with this Order.[2] The money judgment remains in effect. A writ of execution was issued by the Clerk on May 16, 2018.

5. Pending now is the Town's Motion for Summary Judgment on its conversion claim, requesting judgment in the amount of $566,257.65 plus prejudgment interest.[3] Pl.'s MSJ at 7-8. The Town asserts that Viles' criminal conviction for theft by unauthorized taking or transfer satisfies the elements of conversion as alleged in its initial complaint. *Id.* 5-6. Should this motion be granted, the Town agrees to dismiss its other claims of consequential damages, fraud, and punitive damages, without prejudice. *Id.* 8.

## *Standard of Review:*

6. Summary judgment is appropriate if, reviewing the evidence in the statements of fact and record references in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(a),(c); *Platz Assocs. v. Finley*, 2009 ME 55, ¶ 10, 973 A.2d 743 (internal citations omitted).

7. A fact is material if "it has the potential to affect the outcome of the suit." *Id.* "A genuine issue of material fact exists when the fact finder must choose between competing versions of the truth." *Id.* When the party moving for summary judgment bears the burden on a claim or defense, the moving party must establish the existence of each element of the claim or defense without dispute as to any material fact in the record in order to obtain summary judgment. *Cach, LLC v. Kulas*, 2011 ME 70, ¶ 8, 21 A.3d 1015.

8. If the motion for summary judgment is properly supported, then the burden shifts to the non-moving party to respond with specific facts indicating a genuine issue for trial in order to avoid summary judgment. M.R. Civ. P. 56(e).

---

[1] *State v. Viles*, 2017 ME 148, 166 A.3d 1016.
[2] A check of the SA-17-319 file resulted in nothing of note being filed after the writ of execution was issued.
[3] Given that the Town already has a Writ of Execution for $566,257.65 against Viles, one might question why the Town is pursuing the present course of action. 14 M.R.S. § 1602-B(3) allows prejudgment interest in civil actions other than small claims, and actions where a note or contract already sets the prejudgment interest rate. It appears that the SA docket money judgment would be entitled to prejudgment interest.

*Discussion:*

I.      Should the fact that Viles' opposition to the MSJ was untimely by one day result in a finding that Viles has waived any objections to the MSJ?

9. It appears that Viles' Opposition to the Town's Motion for Summary Judgment was untimely filed; therefore she could be found to have waived all objections to the motion pursuant to the Rules of Civil Procedure. A party opposing a motion has 21 days to file a response with supporting affidavits. M.R. Civ. P. 7(C)(2). "A party failing to file a timely memorandum in opposition to a motion shall be deemed to have waived all objections to the motion." *Id.* 7(c)(3).

10. The Law Court has clarified that this Rule does not require that the court grant the unopposed motion; instead, the rule "provides only that an adverse party who has not filed an opposition has waived any opposition to the motion." *Petit v. Lumb,* 2014 ME 117, ¶ 8, 103 A.3d 205.

11. If appealed, the Law Court reviews the trial court's decision on a motion based on a procedural default by the non-moving party for an abuse of discretion. *Id.*

12. In *Petit,* the *pro se* plaintiff filed a motion in opposition to the defendant's motion to dismiss at the 21 day deadline. *Id.* ¶ 3. However, this motion was a photocopy and not a signed original as required by the Rules. *Id.* The Clerk notified plaintiff of her mistake and asked that she resubmit the notices with original signatures, but the plaintiff failed to respond. *Id.* Under these circumstances, the plaintiff was "deemed to have waived all objections to the motion." *Id.* (quoting M.R. Civ. P. 7(c)(3)). A month later the Superior Court granted the defendant's motion to dismiss without notice or further hearing pursuant to Rule 7(c)(3). *Petit,* 2014 ME 117, ¶ 5, 103 A.3d 205.

13. On appeal, the Law Court reasoned that because the plaintiff's motion was not signed it did not have legal effect, making the defendant's motion to dismiss unopposed, therefore not requiring the court to reach the merits of the defendant's motion. *Id.* ¶ 8. However, because the Rule does not obligate the court to act favorably on the motion, the Law Court undertook an analysis of whether the trial court abused its discretion in granting the motion. The Court took note of the plaintiff's "substantial prior experience in litigation as reflected in the record . . . and the express opportunity she was given to submit a corrected and proper court filing." *Id.* ¶ 9.

14. The Court also referenced the rule that "self-represented litigants are afforded no special consideration in procedural matters." *Id.* ¶ 6 (quoting *Clearwater Artesian Well Co. v. LaGrandeur,* 2007 ME 11, ¶ 8, 912 A.2d 1252).

3

15. Here, the Town's Summary Judgment Motion was filed with the Court on July 30[4]. Viles' opposition was due 21 days later under M.R. Civ. P. 7(c)(2). Rule of Civil Procedure 6(a) requires that the day the filing was received be excluded, and the final day of the 21 allowed be included. Using this computation of time, Viles' opposition was due August 20. It was received by the Court on August 21, one day outside the required time under the Rules. Accordingly, the undersigned could treat the Plaintiff's motion as unopposed.

16. Viles has alternated between defending herself *pro se* and being represented by counsel.[5] The Court notified her that *pro se* litigants are bound by the same rules as a litigant represented by counsel in its August 8, 2018 Order of Court after the Town filed its MSJ. Viles should be familiar with litigation as this case has been pending since 2015, and her criminal matters spanned from 2015 through the appeal decided in 2017.

17. However, a wrinkle in this case is that Viles has been incarcerated for a major portion of this particular litigation's life. Although this does not change her *pro se* status before August 21, it is a factor that this Court considers in deciding whether Viles' opposition was untimely, and therefore waiving all objections to the Town's Motion.

18. Because Viles' motion was only one day late, combined with her off and on *pro se* status, and because she is incarcerated, the undersigned decides that the Court should address the merits of the Town's motion and not waive Viles' objections for failure to timely file a response.

**II. Should the conviction of the Defendant affirmed by the Law Court be considered conclusive against the Defendant in a civil action on the same facts?**

19. The question above was addressed in Field & Murray, *Maine Evidence* (6 Ed.) at page 506 by acknowledging that "(T)here is an increasing tendency" to do so, "especially when otherwise a convicted criminal would profit by the crime."

20. In *Hanover Insurance Co. v. Hayward*, 464 A.2d 156 (Me. 1983), the Law Court noted that a final judgment of conviction in a criminal case is preclusive in favor of a third party in a subsequent civil action against the Defendant in that criminal case. As the Law Court stated, "there is no reason that a defendant, having vigorously asserted a defense and been adjudicated guilty on a beyond-a-reasonable-doubt standard, should be allowed to relitigate the issues previously determined." *Id.* at 160-161.

---

[4] In its Reply the Town asserts that it filed its Motion on July 27. The Motion for Summary Judgment was signed that date but was not received by the Court until July 30, making the 30th the proper filing date. M.R. Civ. P. 5(e) provides that the filing of papers "shall be made by filing them with the clerk of the court." A check with the clerk' office confirmed that the date received by the court is the filing date, not the date the motion was signed; moreover the MSJ is stamped 7/30/18.

[5] Viles was represented by Walter McKee until November 2017, by Thomas Nale Jr. from January 2018 through May 2018, and now by Jason Dionne as of August 21, but on a limited basis, regarding only the Town's Motion for Summary Judgment.

4

21. Viles argues that the possession element of conversion cannot be conclusively established because in her criminal case the State did not have to prove exclusive possession. Viles stretches that to mean that the State did not prove possession at all. Collateral estoppel mandates that "when issues are actually litigated and finally adjudicated in a criminal proceeding, the conviction conclusively establishes all facts essential to the final judgment of conviction and is preclusive in favor of a third party in a subsequent civil action against the defendant in the criminal case." *Butler v. Mooers*, 2001 ME 56, ¶ 8, 771 A.2d 1034 (internal quotations and citation omitted).

22. A conversion claim is properly asserted when the plaintiff shows (1) a property interest in the property, (2) a right to possession of the property at the time of the alleged conversion, and (3) a demand for the return of the property that was denied by the holder. *Estate of Barron v. Shapiro & Morley, LLC*, 2017 ME 51, ¶ 14, 157 A.3d 769. Conversion boils down to "the invasion of a party's possession or right to possession at the time of the alleged conversion." *Withers v. Hackett*, 1998 ME 164, ¶ 7, 714 A.2d 798. A Class B theft is proven when, in short, a "person obtains or exercises unauthorized control over the property of another with intent to deprive the other person of the property" and the value of the property is more than $10,000. 17-A M.R.S. § 353(1).

23. At issue in this case is the third element of conversion. In some cases this element is stated as "(3) when the holder has acquired possession rightfully, a demand by the person entitled to possession and a refusal by the holder to surrender." *Mitchell v. Allstate Ins. Co.*, 2011 ME 133, ¶ 15, 36 A.3d 876. Viles cites to pieces of cases that make it appear as though a plaintiff must show that a defendant had the property in their hands to be found to have converted property.[4] However, the Law Court has recently stated that a "converter . . . need only act with an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights." *Id.* (internal quotations omitted). This "dominion or control" piece of conversion aligns squarely with theft when it comes to "exercis[ing] unauthorized control" over property.

24. Because Viles was convicted of theft, it has been conclusively established that she "exercise[d] unauthorized control over the property of another." Viles is collaterally estopped from denying the civil conversion claim. The theft conviction is sufficient to meet the third element of conversion, because Viles had control of and did not return the money. It is irrelevant that the Law Court decided that the State did not need to prove exclusive possession to be convicted of theft, because exclusive possession is not an element of conversion. There is no genuine dispute that Viles had possession of the money at one time or another. In her response to Plaintiff's statement of material facts she "admits that beginning in 2008, the bag containing cash and checks she collected was kept in a bag that was stored in her desk drawer during the day" and at night stored in a shared filing cabinet. Def.'s Response to Pl.'s S.M.F. ¶ 4. Viles' theft conviction conclusively establishes that she "exercise[d] unauthorized control over the

---

4 In its Reply Brief, the Town gives a fair and accurate rendering of *Fernald* and *Leighton*, which Viles unsuccessfully attempts to use to support her position. Pl.'s Reply to Def.'s Opp'n 3-4.

property of another" and she is accordingly collaterally estopped from denying the civil conversion claim.

### III. Is there an issue as to what damages Plaintiff should recover from the Defendant?

25. Viles argues that economic losses are not recoverable in a conversion claim. She further contends that any remaining amount the Town claims she owes it should be subject to an offset by the $58,500 that State Police seized from her home, the 3% commission that the Town owes her for the excise taxes that were never reported due to her theft, and the commission that was withheld for 2015 before her discharge. The Town conceded to give Viles credit for the money seized by the State Police but denies that she is entitled to any offset. Pl.'s Reply to Def.'s Opp'n 5.

26. While it is true that in a conversion claim the traditional measure of damages is the value of the property at the time of the conversion, "[i]n certain cases . . . consequential damages . . . may be warranted when the plaintiff can show that the damages were proximately caused by the defendant's acts and the amount of damages can be shown with reasonable certainty." *Newbury v. Virgin*, 2002 ME 119, ¶ 16, 802 A.2d 413. In *Newbury*, the court found that lost profits were appropriate when the defendant converted the plaintiff's nightclub premises, but that the damages had to be limited to the lost profits that could be shown with reasonably certainty. *Id.* ¶¶ 19-20.

27. Here, the Town had to hire an accounting company to determine the extent of money that was stolen. Had Viles not misappropriated excise taxes, the Town would not have incurred this expense. Thus, the money paid to the accounting company was proximately caused by Viles' acts. However, although $65,309.65 in economic losses was ordered to be paid to the Town, there is no breakdown of what that figure entails. Throughout the pleadings, the Town refers to the "great expense" of paying the accounting company, but only in its Reply does it assert that the $65,309.65 is comprised solely of payments to the accounting company. Even if one takes judicial notice of the Law Court appeal, that decision only states the figure in its entirety as "economic losses."[7] Because the Town has not specifically pled in its Motion what the economic losses are comprised of, there is a genuine dispute of whether the full amount of $65,309.65 can be shown with reasonable certainty to be recoverable as consequential damages under this conversion claim.

28. Viles argues that she is owed $25,200 for commissions for excise taxes collected in 2015, and $15,028.44, representing 3% of $500,948, the amount of excise taxes that Viles withheld instead of depositing to the Town, for a total owed to her of $40,228.44. Viles cites no statutory authority for her claim that this Court is even allowed to offset the judgment, nor can any caselaw be found that would

---

[7] *State v. Viles* doesn't specify that the economic losses are for accounting expenses and no affidavit stating the amount that was paid to the accounting company can be found in the file, let alone the Town's statement of material facts.

6

allow an offset as Viles is requesting. It seems that this claim would have been more appropriately made in mediation, or settlement negotiations, where a compromise could occur. These parties engaged in unsuccessful mediation on March 27, 2018.

29. Caselaw on this matter does not support an offset in Viles' favor. In *Tarbuck v. Jaeckel*, the defendant appealed the Superior Court's judgment that affirmed the District Court's award of interest on a child support arrearage that the defendant owed. 2000 ME 105, ¶ 25, 752 A.2d 176. The defendant argued that the District Court erred by not awarding her offsets against the arrearage for half the proceeds of a sale of mutual property in the divorce decree and a handwritten "IOU" note. *Id.* ¶ 12 n.1. Although the Court declined to weigh in on the issue because the defendant was seeking those offsets for the first time in her appeal, it noted that the defendant failed to file counterclaims under Rule 13(a) or (b). *Tarbuck* further cited to *Federal Deposit Ins. Corp. v. Notis*, noting that "recoupment must be pleaded affirmatively, and if it is not raised it is ordinarily deemed waived." 602 A.2d 1164, 1165 (Me. 1992). If used as an affirmative defense, recoupment "may be adequately pleaded even though the specific words are not used." *Id.*

30. Here, as the Town points out, Viles has not made any counterclaim pursuant to Rule 13 for these amounts. Further, in her answer to the complaint, Viles did not plead any affirmative defenses at all. Because Viles has not raised the offset issue as any sort of counterclaim or affirmative defense, she should be not allowed to argue it now. Therefore, Viles' offset claim is not a material fact, and should not bar summary judgment in favor of the Town.

31. Humming in the background of this Motion is the $566,257.65 money judgment that the Town obtained against Viles via its 10/10/17 Request for Restitution Order to be Made a Money Judgment in SKODC-SA-17-319. The statute authorizing the change from restitution to a money judgment provides that:

> Upon the request of . . . a person entitled to restitution under an order of restitution, the clerk shall enter the order of restitution in the same manner as a judgment in a civil action. When entered under this section, the order of restitution is deemed to be a money judgment. Upon default, the order to make restitution is enforceable in accordance with Title 14, chapter 502 by any person entitled to restitution under the order.

17-A M.R.S. § 1330-C.

32. Chapter 502 governs the enforcement of money judgments. 14 M.R.S. §§ 3120. That chapter is "not an exclusive procedure and may be utilized with any other available procedure." *Id.* Enforcement occurs in District Court, where the judgment creditor can subpoena the debtor for disclosure once every six months. §§ 3121-A, 3124. The debtor may be ordered to make installment payments to the creditor. § 3126-A. Noncompliant debtors may be found in contempt by the court,

which has the power to impose reasonable fines or jail time if the debtor does not comply with an order of the court. § 3136(5).

33. It appears that this chapter would apply equally to both the money judgment that the Town has, and the money judgment that it is seeking. No discernible difference can be found regarding the treatment of, or effect of, the money judgment that the Town has *vis a vis* the money judgment that it is requesting.

34. Writs of execution are issued on final judgments and the purpose of the writ is to enforce a monetary judgment. *Desjardins v. Desjardins*, 2005 ME 77 ¶ 9, 876 A.2d 26 (citing M.R. Civ. P. 69, 14 M.R.S.A. § 4651 (2003)). In Docket No. SA-17-319, the writ of execution does not include prejudgment interest, although there is a section provided for it. The statute addressing interest before judgment only prohibits prejudgment interest on small claims actions. 14 M.R.S. § 1602-B(1). It further limits prejudgment interest to the amount already considered in the contract or note if that is what the claim involves. § 1602-B(2). Writs of execution may be reissued to include interest. *See Chamberlain v. Harriman*, 2017 ME 127, ¶¶ 6-9, 165 A.3d 351 (where a party submitted a motion to "amend and correct" a writ, the court heard oral argument on the motion and ultimately ordered a new writ including post-judgment interest).

35. Research shows that the money judgment that the Town is requesting would be enforced under the same statute as the current money judgment and that the Town could request that the writ of execution be modified to include prejudgment interest. Because of this, the undersigned continues to ponder to why the Town wants to pursue this money judgment on the conversion claim, especially considering, if granted, the Town agrees to dismiss without prejudice the consequential damages, fraud, and punitive damages claims. Having two money judgments from two different dockets on the same set of circumstances is unnecessary. Further, it is likely to create confusion down the line when potentially different attorneys are attempting to enforce and/or defend the money judgment. Of course, if the parties had followed the Court's Order of 11/29/17 perhaps all of the above would have been addressed.

36. Finally, in the event that prejudgment interest is awarded in this case, the Court assumes the parties are aware that Viles could request a full or partial waiver of that interest. Here, prejudgment interest could be awarded from the date the Town's complaint was filed: August 10, 2015. 14 M.R.S. § 1602-B(5). There is a presumption that the prevailing party is entitled to prejudgment interest so long as he does not cause the proceedings to be delayed. *Pierce v. Cent. Me. Power Co.*, 622 A.2d 80, 85 (Me. 1993).

37. Despite that presumption, "[o]n petition of the nonprevailing party and on a showing of good cause, the trial court may order that interest awarded by this section be fully or partially waived." § 1602-B(5). The Law Court reviews a trial court's discretionary grant of a partial or complete waiver of prejudgment interest for an abuse of discretion. *Brown v. Habrle*, 2010 ME 72, ¶ 10, 1 A.3d 401. Lengthy proceedings, unsuccessful interlocutory Law Court appeals, new counsel

8

appearing, and settlements with other parties are not "unwarranted delays sufficient to overcome the presumption of [] entitlement to prejudgment interest." *Pierce*, 622 A.2d at 84-85. There is limited case law on what good cause is, other than the prevailing party requesting, and being granted, continuances. The undersigned is also not sure how a prevailing party who consented to a stay of the case for almost two years would affect a waiver request of prejudgment interest.

*Conclusion*:

38.     The Court concludes that Viles' theft conviction conclusively establishes the elements of conversion and that she is collaterally estopped from denying the civil conversion claim.  Thus, the Court **grants** the MSJ insofar as liability is concerned.

39.     Regarding the amount that the Town is entitled to recover,  the Court **denies** summary judgment regarding the economic losses because there is a genuine dispute about the certainty of those losses.

40.     The Court **again** orders the parties to advise the Court in writing how the Order **sought by Plaintiff** impacts, or should impact, the future proceedings in this case.  The Court also orders that the parties estimate the time necessary for the hearing on damages, keeping in mind that the only amount in dispute is the amount of economic losses the Town is entitled to be awarded.

The Clerk is directed to incorporate this Order by reference into the docket for this case, pursuant to Rule 79(a), Maine Rules of Civil Procedure.

Date: 10/23/18

BY _____
Robert E. Mullen, Deputy Chief Justice
**Maine Superior Court**

9